428 So.2d 406 (1983)
LOUISIANA STATE BAR ASSOCIATION
v.
C. Edward KARST.
No. 81-B-1327.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied March 25, 1983.
*407 Thomas O. Collins, Jr., Richard A. Deas, New Orleans, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, Jr., Lafayette, Phillippi P. St. Pee, Metairie, Gerard F. Thomas, Jr., Natchitoches, for plaintiff-relator.
C. Edward Karst, Alexandria, L. Edwin Greer, Shreveport, for defendant-respondent.

DISCIPLINARY PROCEEDING
BLANCHE, Justice.
This disciplinary proceeding was instituted by the Louisiana State Bar Association, through its Committee on Professional Responsibility, against C. Edward Karst for conduct which the Bar charges as being in violation of Disciplinary Rules 1-102[1] and *408 8-102(B)[2] of the Code of Professional Responsibility.
The charges of misconduct were contained in the following specifications, notice of which was given respondent Karst:
I. SPECIFICATIONAUGUST 7, 1980 SPECIFICATION NO. 1COMMITTEE FILE NO. 6160
In connection with the above-numbered Committee file, it has been alleged:
You were defendant in that certain case in the Ninth Judicial District Court in and for the Parish of Rapides captioned "Joe E. Fryar vs. C. Edward Karst", bearing Docket number 97,699.
That said case was tried before Judge Guy E. Humphries, Jr. and that you were cast in judgment.
That since said decision, you have publicly accused Judge Humphries of being dishonest, corrupt and engaging in fraud and misconduct. That you have accused Judge Humphries of being blackmailed or of accepting bribes to influence his decision.
More specifically, your unfounded allegations of misconduct have been disseminated and printed in letter to the "Town Talk Newspaper" in Alexandria on August 11, 1978; advertisement in the "Alexandria News Weekly" of August 24, 1978; in suit being Docket number 106, 288, Ninth Judicial District Court captioned "C. Edward Karst vs. Joe E. Fryar"; in briefs before the Third Circuit bearing Docket number 6603, captioned "C. Edward Karst, plaintiff-appellant v. Joe E. Fryar, defendant-appellee."
That you caused the aforementioned brief to be published on September 1, 1978 in the "Town Talk" and that said brief contained the same unfounded charges of judicial misconduct against Judge Guy E. Humphries, Jr.
That you did verbally and publicly make the same unfounded charges in depositions taken in the aforementioned litigation.
That you have also falsely accused Attorney J. Minos Simon as being the party responsible for the alleged misconduct. That all of the above constitutes violations of Disciplinary Rule 1-102 and Disciplinary Rule 8-102(B).
A Commissioner was appointed by this court for the purpose of conducting an evidentiary hearing on these charges. Thereafter, the Commissioner filed a report in which he found that respondent Karst had indeed made and disseminated unfounded accusations of misconduct against Judge Humphries and Attorney Simon. The Commissioner concluded, however, that respondent Karst had not violated DR 8-102(B) because he did not "knowingly" make false accusations against the Judge. Evidently, the Commissioner reasoned that respondent's psychological problems caused him to "genuinely believe" in the truth of his accusations and that such genuine belief would excuse him from violation of the rule.
The Commissioner did find that respondent had violated DR 1-102(A)(5) and (6), and concluded that Karst's mental and emotional instability rendered him unqualified to continue to practice law. Accordingly, the Commissioner recommended that respondent be suspended from the practice of law until such time as he could prove by clear and convincing evidence that his mental and emotional disability had been removed.
The Committee on Professional Responsibility filed a concurrence and opposition to the report of the Commissioner, and the respondent Karst filed an answer thereto. Basically, the Committee opposes the Commissioner's conclusion that Karst did not violate DR 8-102(B) because he genuinely believed in the truth of the accusations. The Committee also objects to the Commissioner's recommendation of an indefinite period of suspension and instead recommends that Karst be suspended for at least one year with readmission predicated upon proof of rehabilitation.
*409 Karst, on the other hand, maintains that at the time of the alleged misconduct, he was suffering from diminished responsibility brought on by extreme stress and personal anxiety. He contends that his emotional disability was limited to this single episode for which he has since sought treatment, and that he is competent to continue in the practice of law.
From the foregoing, it appears that this proceeding presents us with two issues for resolution: (1) whether respondent Karst has in fact engaged in conduct in violation of DR 8-102(B) and 1-102; and (2) if so, what punishment is appropriate for such misconduct.

I.
DR 8-102(B) provides that an attorney shall not knowingly make false accusations against a judge or other adjudicatory officer.
In determining that respondent Karst was not in violation of DR 8-102(B), the Commissioner stated:
To violate this Rule, the lawyer must know that he is making false accusations. Based on the expert testimony of the clinical Psychologist and of the Psychiatrist, it is the conclusion of the Commissioner that Respondent believes the truth of the accusations he made against Judge Humphries, although he acknowledged that he had no factual basis for them. Therefore, it appears that he did not knowingly make false accusations against the Judge.
We disagree with the Commissioner's conclusion and find that the respondent Karst did in fact "knowingly make false accusations against a judge." In our opinion, DR 8-102(B) is violated when an attorney intentionally causes accusations to be published which he knows to be false, or which, with the exercise of ordinary care, he should know to be false.
The rationale for DR 8-102(B) appears in Ethical Consideration 8-6, the pertinent part of which provides:
Adjudicatory officials, not being wholly freed to defend themselves, are entitled to receive the support of the Bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.
This provision clearly illustrates that it is not the genuineness of an attorney's belief in the truth of his allegations, but the reasonableness of that belief and the good faith of the attorney in asserting it that determines whether or not one has "knowingly" made false accusations against a judge within the meaning of DR 8-102(B). Consequently, where it is shown that an attorney knew, or in good faith should have known, of the falsity of his accusations, that attorney's unsubstantiated, subjective belief in the truth of those accusations, however genuine, will not excuse his violation of DR 8-102(B).
In the present case, there is no doubt that respondent Karst knew or should have known of the falsity of his allegations. As the Commissioner correctly noted, Karst intentionally caused accusations of serious misconduct on the part of Judge Humphries to be disseminated throughout the community of Alexandria. By respondent's own admissions, those accusations had no factual basis, but were the product of Karst's own highly emotional response to what he subjectively perceived to be a grave injustice committed against him.
At a formal investigatory hearing conducted by the Committee on Professional Responsibility on September 24, 1980, Karst testified as follows:
Q. Do you have any documentary evidence or concrete evidence other than belief or speculation that in fact this took place?
A. I know what my senses perceived, Mr. DeasI know what my sense of *410 sight and my sense of hearing perceived, and it's on these sensory perceptions that I make that allegation.
Q. But you have no documentation.
A. I have noI have noI can't say that they shook hands and he passed him a diamond or that I can't say that I know for a fact that Minos Simon is paying the drug bills of Judge Humphries wife ... (transcript of Investigatory hearing p. 125)
Again, at the Commissioner's hearing on October 21, 1981, Karst stated:
Q. Mr. Karst, I know that this question has been asked to you on depositions and asked you previously, sir, you do not have any factual basis upon which to state that Judge Humphries is guilty of blackmail, corruption, perjury and bribery.
A. Only by logical inference, sir.
Q. And logical inference in your own mind. Is that correct?
A. Very definitely. (Transcript of Commissioner's hearing. pages 62-63)
The above excerpts poignantly illustrate that respondent Karst engaged in exactly the type of spurious and unfounded criticism of the judiciary that DR 8-102(B) is designed to protect against. Although Karst argues that he genuinely believed in the truth of his accusations, his own admissions prove that that belief was not reasonable.
At the formal investigatory hearing and again at the Commissioner's hearing, Karst introduced psychological and psychiatric testimony in an attempt to excuse his actions on the grounds of an alleged mental disability. Both a clinical psychologist and a psychiatrist testified that at the time of their examinations of Karst, the respondent appeared to be operating under an emotional state of diminished responsibility. However, it must be noted that the testimony of the psychologist and psychiatrist was predicated upon examinations made several years after the occurrence of the incidents complained of and neither of the experts was in a position to testify as to the state of mind of the respondent when the false accusations against Judge Humphries were originally made. Consequently, their testimony is not persuasive on the issue of Karst's mental state at the time of the alleged misconduct. The testimony of Karst's wife, father-in-law, and secretary, on the other hand, reflects that during the period of time in which Karst's accusations were first levelled against Judge Humphries, the respondent was successfully practicing law, competently conducting his business affairs, and otherwise exhibiting no unusual symptoms.
A review of the totality of the evidence therefore leads us to conclude that Karst did violate DR 8-102(B) by knowingly making allegations against a judge which he knew or should have known to be false. His subjective belief in the correctness of his allegations does not excuse his reckless disregard for the truth. Neither does his alleged emotional distress which has not been shown to exist at the time of his inexcusable conduct.
Additionally, we conclude that a review of the record supports the Commissioner's finding that respondent Karst acted in violation of DR 1-102(A)(5) and (6). The facts of this case reveal that respondent accused Judge Humphries and Attorney Simon of blackmail, fraud, corruption, and bribery in connection with the litigation captioned "Joe E. Fryar vs. C. Edward Karst," bearing docket number 97,699 in the Ninth Judicial District Court. Respondent caused said accusations to be published in the local press, and has continued to make public accusations against Judge Humphries to the present date. Clearly, such groundless and irresponsible behavior constitutes conduct that is prejudicial to the administration of justice and reflects adversely upon respondent's fitness to practice law.

II.
Having concluded that respondent Karst is guilty of misconduct in violation of DR 8-102(B) and 1-102(A)(5) and (6), it remains for us to determine the appropriate penalty to be imposed for such misconduct.
*411 In doing so, we must remember that the purpose of lawyer disciplinary proceedings is to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice from lawyers who have demonstrated in their conduct that they are unable or likely to be unable to discharge their professional duties. Louisiana State Bar Assn. v. Levy, 400 So.2d 1355 (La.1981), Louisiana State Bar Assn. v. Quaid, 368 So.2d 1043 (La.1979); Louisiana State Bar Assn. v. McSween, 347 So.2d 1118 (La.1977); Louisiana State Bar Assn. v. Ponder, 340 So.2d 134 (La.1976), appeal dismissed 431 U.S. 934, 97 S.Ct. 2643, 53 L.Ed.2d 251; ABA Joint Committee on Professional Discipline, Standards for Lawyer Discipline and Disability Proceedings, § 11, p. 1 (Approved Draft February, 1979). Accordingly, the discipline to be imposed in a particular case will depend upon the seriousness and circumstances of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Assn. v. Bensabat, 378 So.2d 380 (La.1979); see ABA Joint Committee on Professional Discipline, Standards for Lawyer Discipline and Disability Proceedings, § 7.1, p. 44 (Approved Draft February, 1979).
Applying these precepts, we conclude that the one year suspension recommended by the Committee on Professional Responsibility is warranted. Karst's violation of DR 8-102(B) and 1-102(A)(5) and (6) constitutes a serious breach of professional conduct, justifying a substantial punishment to avoid deprecation of the offense and to provide a meaningful deterrant to other potential offenders. A definitive period of suspension is particularly warranted here as the respondent has exhibited no remorse or retraction of his spurious and unfounded allegations against Judge Humphries and has in fact reiterated those allegations in a brief submitted to this court. Furthermore, the recklessness and utter disregard for the truth demonstrated by respondent Karst has adversely reflected upon the integrity of the legal profession and individual members thereof. Karst's violations arise out of and are directly related to the practice of law.
In mitigation, we have considered several circumstances. Respondent Karst is a practicing attorney in Alexandria, Louisiana. This has been his full-time occupation since 1965, except for the period from 1969 through 1973 in which he served as mayor of that city. He maintains a general law practice as a sole practitioner, and, two of his former clients have written letters to the court on his behalf. The instant misconduct arose out of litigation in which respondent Karst was personally involved. As the result of that litigation Karst was faced with financial ruin, the potential loss of his home, and a loss of reputation in the political community. All of these circumstances have been noted by this court in considering a proper punishment. Nevertheless, we conclude that the serious nature of respondent's unwarranted and baseless conduct and its prejudicial effect on the legal profession, far outweighs the mitigating circumstances referred to above and warrants respondent's suspension from the practice of law.
In imposing the present suspension we must also consider the Committee's recommendation that respondent's readmission be predicated upon proof of rehabilitation. Expert psychological and psychiatric testimony reveals that respondent Karst is presently functioning under a state of mental and emotional instability. Donald Gucker, the clinical psychologist who testified as an expert in this case, explained respondent's condition as follows:
I see a good deal of uncontrolled anxietymuch more so that I would like to see in this particular individual. There is a good deal of uncontrolled anxiety that at under stress will become somewhat overwhelmingI think he becomes quite vunerable and will make impulsive decisions to modify what he perceives as the source of the anxiety to eradicate the anxiety. Unfortunately I don't believe that his perceptions are always accurate, consequently he may do some things that *412 may appear atypical or unusual. I see the anxiety, I see some uncontrolled depression, impulsivity, and if I were to sum it up I would use the word "vulnerable" and the words of lossit's loss of perspective that occurs when he tries to view situations. I feel like there is a definite deficitI say this from a point of view of a great deal of experience in terms of evaluating people because much of my practice I get referrals from psychologists, neurologists, psychiatrists to evaluate peopleto evaluate them and make recommendations, and I feel that what I want you to be aware of is that I say this in terms of comparing this individual with many, many, many other individuals that I've seen, and I feel there is a definite deficit here and in the vernacular there is something wrong. (transcript of Investigatory hearing pages 83-84)
This diagnosis was confirmed by Dr. Schober, the psychiatrist who testified at the commissioner's hearing. Dr. Schober described respondent's condition in the following manner:
A. In general it was my impression that he was highly emotional; that he was certainly without any sign of organic brain damagehe seemed to have a very high intellectual function, capable in many areas though there were very definite evidences of his judgment being overwhelmed by emotion on particular issues, and these issues had to do more specifically around the issue of the litigation which I think you gentlemen are familiar with, the Karst
Q. The Fryar litigation?
A. Fryar litigation. (Transcript of Commissioner's hearing transcript, pages 7-8)
Dr. Schober further testified:
Q. And in Ed's case then would you say that this instability would not render him incapable of continuing to practice Law and represent clients in their business?
A. Not necessarilyI would have to have some reservations about that because Iit could easily and unpredictably any dealing with a client could very easily touch upon an area and I would feel better if he had someif there were some attempt at treating his illness before I said that with a greater degree of certainty.
Q. In that connection is his illness treatable?
A. Well from what I know, what I understand about what I've seen in him, yes. (Transcript of commissioner's hearing, page 13)
Even though respondent seems a good candidate for rehabilitation and even though his misconduct was precipitated by a single episode (the Karst v. Fryar litigation), the above psychological testimony clearly supports the Committee on Professional Responsibility recommendation that Karst's readmission to the practice of law be conditioned on his demonstrated rehabilitation.
Considering that disciplinary action serves to protect the public and the bar from the actions of attorneys who have demonstrated professional irresponsibility, it is appropriate that respondent be required to obtain medical treatment and to prove that he can overcome his present emotional disability before he can return to the practice of law.

DECREE
Respondent Karst is suspended from the practice of law for one year, his readmission to be predicated upon proof of rehabilitation.
NOTES
[1] DR 1-102. Misconduct.

A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[2] DR 8-102. Statements Concerning Judges and Other Adjudicatory Officers

(B) A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer.