913 So.2d 816 (2005)
In re J. Clemille SIMON.
No. 04-B-2947.
Supreme Court of Louisiana.
June 29, 2005.
Rehearing Denied November 29, 2005.
*817 Charles Bennette Plattsmier, Chief Disciplinary Counsel, Baton Rouge, Robert *818 Samuel Kennedy, Jr., Asst. Disciplinary Counsel, Shreveport, counsel for appellant.
Schiff Law Corporation, Leslie J. Schiff, Opelousas, J. Clemille Simon, APLC, J. Clemille Simon, counsel for respondent.
PER CURIAM.
The Office of Disciplinary Counsel ("ODC") filed formal charges against respondent, J. Clemille Simon, an attorney licensed to practice law in Louisiana. The disciplinary board recommended the formal charges be dismissed, and the ODC sought review of that decision in this court. For the reasons assigned, we find the formal charges were proven by clear and convincing evidence and therefore impose discipline.

UNDERLYING FACTS

Count I
Respondent filed a personal injury suit in Vermilion Parish on behalf of Sandra and Joey Simon. The suit was randomly allotted to Judge Edward Rubin of the 15th Judicial District Court. Subsequently, respondent filed a motion to recuse Judge Rubin, asserting Judge Rubin was biased and prejudiced because he ruled against the plaintiffs in several pre-trial motions. Respondent alleged in his motion, among other things, that Judge Rubin "embarked upon a campaign of misrepresenting the truth" and "made intentional misrepresentations of fact, for the purpose of prejudicing" respondent and the plaintiffs.
Judge Rubin referred the motion to recuse to Judge John Trahan. Judge Trahan conducted a 5½-hour evidentiary hearing on the motion, at which Judge Rubin was the only witness. At the conclusion of respondent's presentation, Judge Trahan denied the motion to recuse, finding it "groundless."

Count II
Respondent filed a personal injury suit in Lafayette Parish on behalf of Leslie Counselman. One of the defendants in the case, United Services Automobile Association, was represented by attorney Patrick Briney of the Lafayette law firm of Briney & Foret. The suit was randomly allotted to Judge Edward Rubin.
During the course of the litigation, respondent learned that the judges of the 15th JDC had previously retained Mr. Briney to represent the court in connection with a challenge to its misdemeanor probation program in a criminal case captioned State v. Cavazos. Based on this information, respondent filed a motion to disqualify Mr. Briney and his firm as attorneys of record in the Counselman case. The motion also sought the recusal of "all Judges of the 15th Judicial District Court from the instant matter." In support, respondent argued that an obvious appearance of impropriety existed as a result of the "intimate, personal and confidential attorney/client relationship" between the judges and Mr. Briney.
Judge Rubin denied respondent's motion without conducting a hearing, and the court of appeal denied respondent's application for supervisory writs. Respondent then applied to this court. We granted the writ in part and appointed retired Judge Anne Lennan Simon to conduct an evidentiary hearing on the motion. Counselman v. Progressive Ins. Co., 01-2335 (La.8/13/01), 794 So.2d 837. After conducting a hearing, Judge Simon denied respondent's motion, finding that Mr. Briney was retained by the 15th JDC judges solely to represent the court in an official capacity, and that Mr. Briney had no other legal relationship with the judges.
Respondent then sought review of Judge Simon's ruling in the Court of Appeal, *819 Third Circuit.[1] In his writ application, respondent included a four-page "Hypothetical Telephone Conversation Between Patrick J. Briney And His Clients (Judges of The 15th Judicial District Court)" in support of his argument that the "official capacity" defense was legally unsound.[2] The court of appeal refused to accept the writ application for filing and directed the clerk of court to return it to respondent, with instructions that he delete the "hypothetical" conversation. Respondent complied with the court's instructions but included the following footnote in the revised writ application:
Plaintiff had previously attempted to set forth in the context of a hypothetical conversation a truthful portrayal of the absurd imagery of defense counsel's "official capacity" defense. By Order of this Court plaintiff is not at liberty to exercise her First Amendment freedom of speech nor engage in any such truthful debate. As such, the hypothetical conversation has been deleted.
On the merits, the court of appeal denied respondent's application for supervisory writs, as did this court. Counselman v. Progressive Ins. Co., 02-0474 (La.3/8/02), 811 So.2d 879. The clerk of the court of appeal forwarded copies of respondent's original writ application and revised application to the ODC.

Count III
In the writ application subject of Count II, respondent raised as error Judge Simon's denial of his motion to disqualify Mr. Briney, stating at page iii of the application:
Judge Simon (Judge Ad Hoc) has committed reversible error in the performance of her duties as Judge Ad Hoc. Specifically, Judge Simon utilized the wrong standard (subjective) in deciding this issue. In denying plaintiff's Motion to Disqualify/Recuse Defense Counsel, Judge Simon has violated not only controlling legal authority but the very principals [sic] (honesty and fundamental fairness) upon which our judicial system is based. Judge Simon's denial undermines the efficacy of our jurisprudence, attorney ethics and judicial canons and serves no other purpose but to promote public disrepute and distrust of our legal system. Indeed, Judge Simon's denial of plaintiff's motion is baseless and legally, logically and ethically unsound. [emphasis added]
The ODC alleges that in using the highlighted language, respondent personally attacked Judge Simon's integrity without any reasonable factual basis for doing so.

DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed three counts of formal charges against respondent. The charges are as follows:
COUNT I
You represented Joey and Sandra Simon, plaintiffs in a personal injury lawsuit that you filed in Vermilion Parish, which was assigned to Judge Edward Rubin of the 15th JDC. After Judge Rubin ruled against you in several pre-trial motions, you brought a Motion to Recuse seeking to remove Judge Rubin *820 from the case and personally attacked his judicial integrity without any reasonable factual basis for doing so.
Again, without any factual basis for doing so, you improperly accused Judge Rubin of "embarking upon a campaign of misrepresenting the truth," further asserting that he had "made intentional misrepresentations of fact, for the purpose of prejudicing (you) and (your clients)." Your conduct violates Rule 8.2(a).
In support of your motion to recuse, you cited substantive rulings Judge Rubin made which you contend were improper and without legal support, yet Judge Rubin was affirmed by the appellate court on virtually all substantive issues raised by your writ applications. In the hearing on the motion to recuse, you were unable to produce any identifiable evidence of Judge Rubin's bias or personal animus against you or your client, despite your claims that such evidence existed. Another judge appointed to hear the recusal motion denied same immediately after the hearing was concluded. Your conduct violates Rules 3.1 and 3.3 of the Rules of Professional Conduct.
Your actions in bringing a groundless and frivolous motion to recuse Judge Rubin caused delay in the prosecution of your clients' case and diverted the court's attention from other, substantial court business. Your conduct violates Rule 8.4(d) of the Rules of Professional Conduct.
COUNT II
In another personal injury case (Counselman v. Progressive Insurance Co.) you brought yet another motion to recuse the entire 15th Judicial District Court from hearing any cases where Patrick Briney or his firm was representing the opposing party. After the ad hoc judge appointed to hear your motion denied same after a hearing, you filed a writ application with the 3rd Circuit Court of Appeals. In that application, you created a wholly fictitious telephone conversation, which you allege accurately represented verbal communications between your opposing counsel and the judges of the 15th JDC. The judges and opposing counsel are depicted in that conversation as conspiring to deprive both you and your client of substantive rights and to subvert the justice system.
Upon reviewing the contents of that fictitious telephone conversation, the Judges of the Third Circuit Court of Appeals refused to accept your writ application for filing and instructed the clerk to return it to you, with instructions to remove the "hypothetical" conversation. The Court also found your brief to be "replete with insulting, abusive, discourteous and irrelevant matter" in violation of Rule 2-12.4 of the Uniform Rules of the Court of Appeal.
Although you removed the offending conversation from the brief, you nonetheless continued to insist that your depiction represented a "truthful portrayal" of communications you alleged occurred among Mr. Briney and the judges of the 15th JDC, despite the fact that there is no evidence that any conversation such as you described ever took place. Your conduct violates Rules 3.1, 3.3 and 8.2(a) of the Rules of Professional Conduct.
COUNT III
Judge Anne Lennan Simon was appointed ad hoc by the Louisiana Supreme Court to hear your recusal motion brought against the judges of the 15th JDC. After a full hearing, Judge Simon *821 dismissed your motion and assigned written reasons. In appealing her decision, you wrote in your writ application to the Third Circuit Court of Appeals that Judge Simon "violated not only controlling legal authority but the very principals [sic] (honesty and fundamental fairness) upon which our judicial system is based." Your conduct violates Rule 8.2(a) and 8.4(d) of the Rules of Professional Conduct.
Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing, at which time the ODC and respondent introduced volumes of documentary evidence and presented the testimony of numerous witnesses.

Hearing Committee Recommendation
As to Count I, the hearing committee concluded the ODC failed to prove by clear and convincing evidence that the motion to recuse was frivolous. Notwithstanding that respondent did not win the motion, the committee found there is insufficient evidence to support the ODC's allegation that the motion had no basis in law or fact. In this regard the committee was particularly impressed that Judge Rubin did not deny the motion outright but chose to refer it to another judge for hearing. Next, the committee concluded the ODC failed to prove by clear and convincing evidence that respondent made false statements in the motion to recuse. The committee pointed out that respondent believed at all times that the motion had merit. Moreover, the committee found the evidence presented at the hearing proved that respondent's clients could reasonably have believed that Judge Rubin's rulingssome of which were overturned by the Third Circuitnecessitated the motion to recuse. Third, the committee found the ODC failed to prove by clear and convincing evidence that the motion to recuse, taken as a whole, contains improper allegations as to Judge Rubin. Finally, the committee found the ODC failed to prove by clear and convincing evidence that the filing of the motion to recuse was prejudicial to respondent's clients or to the administration of justice. Accordingly, the hearing committee recommended Count I be dismissed.
Turning to Count II, the committee concluded that in his writ application filed with the Third Circuit, respondent made false statements about the 15th JDC judges and made statements with reckless disregard concerning the integrity of certain judges in the 15th JDC. Such conduct violated Rules 3.3 and 8.2(a) of the Rules of Professional Conduct. However, the committee concluded the ODC failed to prove by clear and convincing evidence that respondent violated Rule 3.1 by including the hypothetical telephone conversation in the writ application. The committee found respondent was clearly arguing for modification or reversal of the law in his writ application, and pointed out that nearly every Third Circuit judge identified merit in respondent's argument criticizing the "official capacity" defense offered by Mr. Briney.
Finally, as to Count III, the committee concluded the ODC failed to prove by clear and convincing evidence that respondent knowingly made false statements, or that his statements contained in the assignment of error rose to the level of reckless disregard concerning the integrity of Judge Simon. The committee also concluded the ODC failed to prove by clear and convincing evidence that respondent's conduct was prejudicial to the administration of justice, given the unanimous testimony of the Third Circuit judges that the assignment of error was neither unethical nor a violation of any court rule. Therefore, the *822 committee recommended Count III be dismissed.
Turning to the issue of an appropriate sanction for respondent's misconduct in Count II, the committee found respondent violated duties owed to the judiciary and the legal system. There was no evidence of harm to respondent's client, but the potential for harm existed in that the hypothetical telephone conversation potentially lessened the public's trust and confidence in the judiciary. The unnecessary reference to certain judges in a negative context was reckless and offensive, and caused harm to the judges depicted. The committee found that respondent knew certain statements contained in the colloquy were false, but that he did not knowingly or intentionally mislead the court because he labeled the conversation as hypothetical. The committee determined that the baseline sanction for respondent's misconduct is a reprimand.
As aggravating factors, the committee acknowledged respondent's prior disciplinary offenses[3] and substantial experience in the practice of law (admitted 1990). In mitigation, the committee recognized the absence of a dishonest or selfish motive and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
The committee noted that suspensions were imposed in both Louisiana State Bar Ass'n v. Karst, 428 So.2d 406 (La.1983) (one-year suspension), and In re: Larvadain, 95-2090 (La.12/8/95), 664 So.2d 395 (three-month suspension, deferred subject to probation), for misconduct similar to that at issue in this case. However, the committee believed those cases involved more egregious conduct than respondent's,[4] and instead found cases from other jurisdictions to be more persuasive. See In re Wilkins, 782 N.E.2d 985 (Ind.2003) (on rehearing) (brief signed by attorney included a footnote stating that the opinion of the appellate court was "so factually and legally inaccurate that one is left to wonder whether the Court of Appeals was determined to find for Appellee Sports, Inc., and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision)"; public reprimand imposed); Kentucky Bar Ass'n v. Heleringer, 602 S.W.2d 165 (Ky.1980) (attorney claimed in a press conference that the trial judge acted in a manner that was "highly unethical and grossly unfair"; public reprimand imposed).
Considering all the circumstances, the committee recommended that respondent be publicly reprimanded for his conduct in Count II which impugned the integrity of the judges of the 15th JDC. The committee further recommended that respondent be ordered to attend four hours of professionalism classes for each of the next three years, failing which he should be suspended.
Both respondent and the ODC filed objections to the hearing committee's report and recommendation.

Ruling of the Disciplinary Board
As to Count I, the disciplinary board agreed with the hearing committee's finding that the ODC did not prove by clear *823 and convincing evidence that respondent violated Rules 3.1, 3.3, 8.2(a), and 8.4(d). Based upon the court of appeal's reversal of several of Judge Rubin's rulings in the Simon case, respondent "demonstrated tangible reasons for his belief that a motion to recuse Judge Rubin was warranted." The board further noted that respondent's clients were consulted about whether to bring the motion to recuse and supported it.
In Count II, the board accepted the committee's finding that the ODC did not prove respondent violated Rule 3.1 by raising frivolous claims in the court of appeal. In support, the board observed that several of the court of appeal judges who testified at the hearing indicated respondent presented a legitimate issue of "judicial independence in light of an attorney-client relationship"; but for respondent's decision to abandon his argument with respect to the recusal of all the 15th JDC judges, he may have obtained the result that he sought.
The board rejected the committee's finding that respondent violated Rule 3.3 by failing to act with candor toward a tribunal. According to the board, respondent did not knowingly or otherwise misrepresent a material fact because the hypothetical, which is clearly identified as such, is not a fact nor is it material to the issue presented to the court of appeal.
The board agreed, however, that the hypothetical may have impugned the integrity of the judges of the 15th JDC, and to that extent, respondent has technically violated Rule 8.2(a). The board noted that respondent's "use of real names, identifiable hobbies and interests and actual cases shifted the focus from hypothetical to real people." Nonetheless, the board found respondent's hypothetical was not intended to impugn the integrity of the judges but to defeat the "official capacity" defense.[5]
Considering the case as a whole, the board found respondent's actions did not warrant discipline. However, the board cautioned respondent that his conduct "falls well short of the goals of professionalism" and that he "would be well served to abstain from such conduct in the future." Two board members dissented and would recommend that respondent be sanctioned.
The ODC sought review of the board's ruling in this court. We ordered the parties to submit briefs addressing the issue of whether the record supports the disciplinary board's report. After reviewing the briefs filed by both parties, we docketed the matter for oral argument.

DISCUSSION
Bar disciplinary matters fall under the original jurisdiction of this court. La. Const. art. V, § 5(B). We act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992).
The primary allegation made by the ODC in all three counts of the formal charges is that respondent's conduct violated Rule 8.2(a) of the Rules of Professional Conduct.[6] That rule provides in pertinent part as follows:

*824 A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, ...
Because this rule proscribes only statements which the lawyer knows to be false or which the lawyer makes with reckless disregard for the truth, it comports with the First Amendment's guarantee of free speech.[7] See Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In Louisiana State Bar Ass'n v. Karst, 428 So.2d 406 (La.1983), we interpreted DR 8-102(B), the predecessor of Rule 8.2(a). We adopted an objective standard, rather than a subjective standard, in analyzing whether a statement is knowingly or recklessly false and hence a violation of the rule:
In our opinion, DR 8-102(B) is violated when an attorney intentionally causes accusations to be published which he knows to be false, or which, with the exercise of ordinary care, he should know to be false.
The rationale for DR 8-102(B) appears in Ethical Consideration 8-6, the pertinent part of which provides:
Adjudicatory officials, not being wholly freed to defend themselves, are entitled to receive the support of the Bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.
This provision clearly illustrates that it is not the genuineness of an attorney's belief in the truth of his allegations, but the reasonableness of that belief and the good faith of the attorney in asserting it that determines whether or not one has "knowingly" made false accusations against a judge within the meaning of DR 8-102(B). Consequently, where it is shown that an attorney knew, or in good faith should have known, of the falsity of his accusations, that attorney's unsubstantiated, subjective belief in the truth of those accusations, however genuine, will not excuse his violation of DR 8-102(B).
Following these precepts, we now turn to an examination of respondent's assertions against the various judges in this case to determine whether, under an objective standard, a reasonable attorney would believe in the truth of the allegations.

Count I
In his motion to recuse Judge Rubin in the Simon case, respondent alleged that Judge Rubin "embarked upon a campaign of misrepresenting the truth" and "made intentional misrepresentations of fact, for the purpose of prejudicing" respondent and the plaintiffs. Respondent asserts these allegations were reasonable because the record reveals a pattern of unfavorable pre-trial rulings against his clients, several of which were reversed upon appellate review. Respondent further contends that Judge Rubin admitted *825 to improper actions in this case. According to respondent, Judge Rubin initially represented that he had a telephone conference with both attorneys in the case regarding the setting of defendants' motions, but later conceded during the disciplinary hearing that he did not conduct this telephone conference.
We do not believe these facts would cause a reasonable person to believe that Judge Rubin "embarked upon a campaign of misrepresenting the truth." The mere fact that Judge Rubin may have committed legal error in some of his pre-trial rulings does not lead to the inevitable conclusion that his rulings stemmed from an improper motive against respondent or his client. See In re Sawyer, 360 U.S. 622, 635, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) ("Some lay persons may not be able to imagine legal error without venality or collusion, but it will not do to set our standards by their reactions."). Likewise, Judge Rubin's erroneous statement that he held a telephone conference with both attorneys does not provide evidence that Judge Rubin made "intentional misrepresentations of fact." Instead, this appears to be a simple mistaken recollection by Judge Rubin, which is understandable when considering the large number of cases handled by a trial judge.[8]
Considering the record as a whole, we find nothing in Judge Rubin's actions which would cause a reasonable person to believe that he "embarked upon a campaign of misrepresenting the truth" and "made intentional misrepresentations of fact, for the purpose of prejudicing" respondent and the plaintiffs. Therefore, we must conclude respondent's statements were knowingly false.

Count II
The allegations of Count II revolve around respondent's inclusion of a "hypothetical" telephone conversation in his writ application in the Counselman case. Respondent asserts this hypothetical conversation was designed to illustrate the fallacy of the "official capacity" defense advanced by opposing counsel in support of the argument that disqualification was not warranted. Because the conversation was labeled "hypothetical," respondent contends it was not intended to be a true statement; rather, it was the "antithesis of factual."
Despite respondent's labeling of the conversation as "hypothetical," the conversation uses the real names of judges and attorneys and makes reference to these persons' identifiable hobbies and interests, as well as actual pending cases. While we agree respondent did not represent that this conversation actually took place, he clearly intended to convey that the judges referenced in the conversation were engaged in improper conduct. These depictions were not essential to the arguments raised in the writ application; respondent was perfectly capable of arguing against the "official capacity" defense without resorting to insults and disrespect for the judiciary.
We would eviscerate Rule 8.2(a) if we were to shield an attorney from discipline for making knowingly false statements about judges simply because he used the artifice of a "hypothetical." Under the facts of this case, we must conclude respondent violated Rule 8.2(a).

Count III
In this count, the ODC alleges respondent falsely impugned the honesty of Judge Simon when he asserted that her denial of the motion to disqualify "violated *826 not only controlling legal authority but the very principals [sic] (honesty and fundamental fairness) upon which our judicial system is based." In his brief to this court, respondent defends his allegations against Judge Simon, which he asserts represent an "accurate assessment" of her ruling.
In In re Sawyer, 360 U.S. at 635, 79 S.Ct. 1376, the United States Supreme Court explained that the "public attribution of honest error to the judiciary is no cause for professional discipline in this country." Nonetheless, respondent's allegations against Judge Simon go beyond charges of "honest error." To the contrary, respondent asserts that Judge Simon's ruling violates principles of "honesty and fundamental fairness."
Our review of Judge Simon's November 12, 2001 ruling denying respondent's motion to disqualify finds it is well grounded in the law and precedents established by this court. Nothing in that ruling supports the view that Judge Simon acted dishonestly or that she violated principles of fundamental fairness in denying the motion.
Therefore, considering the facts from an objective standpoint, we find it was not reasonable for respondent to allege Judge Simon's ruling violates principles of "honesty and fundamental fairness." We must conclude respondent made this vitriolic statement with full knowledge of its falsity.

DISCIPLINE
Having found evidence of professional misconduct, we now turn to a discussion of the appropriate discipline to be imposed. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
In Karst, 428 So.2d at 411, we observed that a violation of Rule 8.2(a) (then DR 8-102(B)) "constitutes a serious breach of professional conduct, justifying a substantial punishment to avoid deprecation of the offense and to provide a meaningful deterrent to other potential offenders." In imposing an actual period of suspension in that case, we found it significant that the lawyer "exhibited no remorse or retraction of his spurious and unfounded allegations" against the trial judge.
In the same way, we find respondent in the instant case has consistently refused to acknowledge the wrongful nature of his conduct, and has failed to demonstrate remorse for his actions. Other aggravating factors present in this case include respondent's prior disciplinary record and his substantial experience in the practice of law. In mitigation, we recognize the absence of a dishonest or selfish motive and respondent's cooperative attitude toward these proceedings.
Considering the record as a whole, we conclude the appropriate sanction for respondent's misconduct is a suspension from the practice of law for a period of six months. However, we will defer all but thirty days of this suspension on the condition that respondent successfully complete the Louisiana State Bar Association's Ethics School program. We urge respondent to take this opportunity to reflect upon his professional and ethical duties as a member of the bar of this state, in particular the need to balance the zealous advocacy of a client's cause with his oath *827 as an attorney to "maintain the respect due to courts and judicial officers." In fashioning the sanction in this manner, we caution respondent that we will not tolerate any future misconduct of the type seen here.

DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that J. Clemille Simon, Louisiana Bar Roll number 19996, be and he hereby is suspended from the practice of law for a period of six months. It is further ordered that all but thirty days of this suspension shall be deferred, subject to the condition that respondent shall enroll in and attend the next session of the Ethics School program offered by the Louisiana State Bar Association's Practice Assistance and Improvement Committee. Failure to comply with this condition or any other misconduct within a period of one year from the finality of this opinion may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Appendix

Hypothetical Telephone Conversation Between Patrick J. Briney And His Clients (Judges of The 15th Judicial District Court)
Patrick Briney: Ring ... ring ... ring
. . .
Judge Everett: Hello?
Patrick Briney: Glen?
Judge Everett: Yes ...
Patrick Briney: Hi Glen, this is Pat ... how are you my good friend?
Judge Everett: Hey Pat ... I'm doing fine ... how are you?
Patrick Briney: I can't complain ... although I'm having to work more than I'd like especially since Simon is trying to disqualify me.
Judge Everett: Yeah, that's an interesting situation. I'm told Ed dismissed the motion without even allowing a hearing.
Patrick Briney: Yeah ... we made Simon take writs to the Supreme Court... Of course, they reversed and remanded.
Judge Everett: So I heard.
Patrick Briney: Yeah ... lucky for us they appointed Judge Anne Simon ... she's made short shrift of Simon's motion... thank God she reversed her previous discovery ruling and didn't allow Simon to take my deposition ... I think I dodged a bullet there ...
Judge Everett: Yeah, what's Simon going to do now?
Patrick Briney: Oh, if history is any indication, he'll take writs. We should be alright since Judge Simon denied Simon's motion and I did not have to disclose all of the details of our relationship.
Judge Everett: Well, Pat what can I do for you today?
Patrick Briney: I was calling about the situation in State v. Cavazos ... are you wearing your official black judicial robe?
Judge Everett: Hold on ... it's hanging right here ... let me put it on ...
Patrick Briney: That would be a good idea ...
(pause)
Judge Everett: Pat?

*828 Patrick Briney: Yeah, Glen ...
Judge Everett: Ok ... I've got my official black judicial robe on.
Patrick Briney: Great, now we can talk about State v. Cavazos because, as you know, I only represent you all in your "official capacity." What are we going to do if the Supreme Court grants Attorney Block's writ?
Judge Everett: Hell ... I don't know... we probably should get Judge Edwards on the phone since he has taken my place as chief judge.
Patrick Briney: Good idea ... I happen to have his personal cell phone number right here, I'll try to conference him now.
(pause)
Judge Edwards: Hello?
Patrick Briney: Jules ... it's Pat ... I've got Glen on the line.
Judge Edwards: Hey Pat ... hey Glen... what's up?
Patrick Briney: I had called Glen to talk about State v. Cavazos.

Judge Everett: And I figured since you were now chief judge that we should get you on the phone.
Patrick Briney: You have your official black judicial robe handy?
Judge Edwards: I'm actually at the National Guard headquarters and don't have my official black judicial robe.
Patrick Briney: Well ... you probably should [not] participate because, as you know, I only represent you all in your "official capacity."
Judge Everett: Fortunately, Pat caught me at my office and I have my robe on.
Patrick Briney: Well, Jules ... with your permission we'll continue to discuss State v. Cavazos without you. I'll give you a call later. Will you have your robe and shall I call you at home or on your cell phone?
Judge Edwards: I'll be home and yes I'll have my robe so we can talk then.
Patrick Briney: Great, we'll talk then. Bye Jules.
Judge Edwards: Bye Pat ... bye Glen.
Judge Everett: Bye Jules.
Patrick Briney: Well, what next?
Judge Everett: Let's try to get Ed on the phone.
Patrick Briney: Good idea, I happen to also have his private cell phone number. Chances are, however, he'll be on the tennis courts and won't have his official black judicial robe handy.
Judge Everett: He sure does love that tennis!
(pause)
Judge Rubin: Hello?
Patrick Briney: Ed, hello this is Pat, I've got Glen on the line.
Judge Rubin: Hey Pat, hey Glen ... how you all doing?
Patrick Briney: Great.
Judge Everett: Working as usual ... what are you doing, playing tennis?
Judge Rubin: Of course, I've got to practice ... Chanda is coming home next week and I know she'll want to play. By the way Glen, do you think you can cover my cases so that I can play tennis with Chanda next week?
Judge Everett: Not a problem, next week is my office week.
Judge Rubin: Great. So what's up?
Patrick Briney: I was calling to talk about State v. Cavazos.

Judge Rubin: Is that the case where Simon is raising hell and trying to disqualify you?
Patrick Briney: Not exactly ... Simon is trying to disqualify me in that civil *829 case pending before you. Remember, you denied his motion without a hearing?
Judge Rubin: Oh yeah ... State v. Cavazos is the one where Block is causing trouble.
Patrick Briney: That's right. Wouldn't it be nice if Simon and Block would just do like most others and let us do what we please?
Judge Rubin: Are you kidding? Simon is Minos' son and Block used to work for Minos.
Patrick Briney: I guess it's true what they say ... the acorn doesn't fall far from the tree ... Heaven help us.
Judge Rubin: Well, if we are going to talk about State v. Cavazos I'll have to get my official black judicial robe out of my Mercedes and put it on ... hold on a minute.
(pause)
Judge Rubin: Ok ... let's talk.
Patrick Briney: Shouldn't we also get Tommy on the phone since he was primarily responsible for establishing the misdemeanor department and in hiring me and my firm?
Judge Everett: Perhaps.
Judge Rubin: Yeah.
Patrick Briney: Good thing I also have his private cell phone number, I'll bet he's fishing or hunting with my partner. My how those two love to hunt and fish.
Judge Rubin: Almost as much as I love to play tennis, ha ... ha ... ha.
(pause)
Judge Duplantier: Hello?
Patrick Briney: Tommy, Pat here, I've got Glen and Ed on the phone ... what are you doing my good friend?
Judge Duplantier: Trying to teach your partner how to fish ... might I add he's not learning very well.
Patrick Briney: Hell, he never works because he's either fishing or hunting, he should be a pro by now.
Judge Rubin: Where are you two fishing?
Judge Duplantier: In the Gulf, I'm surprised that you were able to reach me.
Judge Everett: Pat said you would be fishing . . . he knows you pretty well.
Judge Duplantier: Almost as well as his partner I'd expect. So what's up?
Judge Everett: Pat was calling to talk about State v. Cavazos.

Patrick Briney: Did you happen to bring your robe fishing with you Tommy?
Judge Duplantier: No, I left it hanging in my office when I left Wednesday to come fishing.
Patrick Briney: Well, since I've taken the position with Simon that I only [represent] you all in an "official capacity" it's probably best that we not talk without you wearing your robe, after all, when I testified, I took an oath.
Judge Rubin: Ok then, I guess I can get back to my tennis game?
Foret (Briney's partner): I've got a big one ... get the gaff Tommy!
Judge Duplantier: Gotta go guys ... Charlie has finally caught a fish.
Patrick Briney: Ok. Tell you what ... how about we all get together at Ruth Chris' Steakhouse Sunday night ... I'll reserve a private room. My treat! You all bring your robes ... we'll eat dinner and then discuss what we will do next in State v. Cavazos.

Judge Everett: See you all then. Bye bye.
Judge Rubin: Can I bring Chanda?

*830 Patrick Briney: Certainly, I want an autograph.
Judge Rubin: You got it ... see you Sunday.
Judge Duplantier: Adios.
JOHNSON, J., dissents and would impose a longer period of actual suspension.
CALOGERO, C.J., concurs in part & dissents in part, and assigns reasons.
WEIMER, J., concurs in part & dissents in part & assigns reasons.
CALOGERO, Chief Justice, concurs in part and dissents in part.
I differ with the majority as does my brother Justice Weimer regarding the appropriate sanction for respondent's conduct. I, too, would simply impose a public reprimand.
WEIMER, J., concurring in part and dissenting in part.
I agree with the conclusions of the hearing committee and disciplinary board regarding Count I and thus would not impose discipline on that count. I also agree with the conclusions of the disciplinary board regarding Count II. I agree with the majority that respondent violated Count III. I would impose a public reprimand as recommended by the hearing committee. I also agree with the disciplinary board that respondent's conduct, although in some instances not unethical, "falls well short of the goals of professionalism." The line between aggressive advocacy and unprofessional conduct was crossed by the respondent.
NOTES
[1] As previously noted, respondent had also sought to recuse the 15th JDC judges, which Judge Simon declined to do. In his writ application, respondent abandoned this issue and limited his argument to the portion of Judge Simon's judgment denying the motion to disqualify Mr. Briney.
[2] The text of the hypothetical telephone conversation is attached as an appendix to this opinion.
[3] In May 2000, respondent was admonished by the disciplinary board for his violation of Rule 1.7 of the Rules of Professional Conduct (engaging in a prohibited conflict of interest by representing adverse parties in contemporaneous litigation).
[4] Karst accused a judge of being "dishonest, corrupt and engaging in fraud and misconduct," and caused his unfounded accusations to be disseminated throughout the community. Larvadain accused a judge of being a racist while cursing him, threatening him, and attempting to intimidate him.
[5] The board did not specifically discuss Count III, but apparently accepted the committee's determination that the ODC failed to prove the charged misconduct.
[6] Although the ODC alleged other rule violations, it is clear these violations are largely ancillary to the Rule 8.2(a) violations. Accordingly, this opinion focuses on Rule 8.2(a), which is the "heartland" of respondent's misconduct. See In re: Rome, 01-2942 (La.9/26/03), 856 So.2d 1167.
[7] Reading Rule 8.2(a) literally, it is possible to argue that it prohibits making a statement with reckless disregard for its truth or falsity, even if it is true. Most commentators have rejected this view. Geoffrey C. Hazard, Jr. and W. William Hodes, 2 THE LAW OF LAWYERING § 63.2 n. 4 (3d ed.2003); Charles W. Wolfram, MODERN LEGAL ETHICS § 11.3.2 n. 51, 54 (1986).
[8] During respondent's disciplinary hearing, Judge Rubin explained that at his direction, the telephone conference was conducted by his office staff.