| JAMES RYAN NEWHART | * | NO. 2020-CA-0374 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| DIEDRE PIERCE KELLY AND | * | |
| ARTHUR MORRELL, IN HIS | | FOURTH CIRCUIT |
| OFFICIAL CAPACITY AS | * | |
| CLERK OF COURT FOR THE | | STATE OF LOUISIANA |
| PARISH OF ORLEANS, STATE | * * * * * * * | |
| OF LOUISIANA | | |

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
|---|---|
| C. GARY WAINWRIGHT | NO. 2020-CA-0375 |
| VERSUS | |
| DIEDRE PIERCE KELLY AND THE HONORABLE ARTHUR A. MORRELL | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-06387  C\W 2020-06387, DIVISION "B-1"
Honorable Rachael Johnson,
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Edwin A. Lombard, Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods, Judge Paula A. Brown, Judge Dale N. Atkins)[1]

**BELSOME, J., CONCURS FOR THE REASONS ASSIGNED BY JUDGE LEDET.**
**LOBRANO, J., CONCURS IN PART AND DISSSENTS IN PART FOR THE REASONS ASSIGNED BY JUDGE JENKINS.**
**LEDET, J., CONCURRING WITH REASONS**
**JENKINS, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS**
**ATKINS, J., CONCURS FOR THE REASONS ASSIGNED BY J. LEDET.**

Scott L. Sternberg
Marcia Suzanne Montero

---

[1] Judges Terri F. Love, Daniel L. Dysart, and Tiffany G. Chase recused themselves.

STERNBERG NACCARI & WHITE, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112

C. Gary Wainwright
LAW OFFICE OF C. GARY WAINWRIGHT PLC
2739 Tulane Avenue
New Orleans, LA 70119


Douglas Hammel
THE HAMMEL LAW FIRM
3129 Bore Street
Metairie, LA 70001

   COUNSEL FOR PLAINTIFF/APPELLANT

R. Gray Sexton,
ATTORNEY AT LAW
2415 Quail Drive
3rd Floor
Baton Rouge, LA 70808-0590

Alesia M. Ardoin
LAW OFFICES OF R. GRAY SEXTON
8680 Bluebonnet Blvd.
Suite D
Baton Rouge, LA 70810

Madro Bandaries
MADRO BANDARIES, P.L.C.
938 Lafayette Street, Suite 507
New Orleans, LA 70156


   COUNSEL FOR DEFENDANT/APPELLEE

            **AFFIRMED**
            **August 11, 2020**

PAB
JFM
EAL
RBW

This is an election suit. Appellant/Petitioner, James Ryan Newhart ("Mr. Newhart"), a registered voter who resides on Iberville Street in New Orleans, Orleans Parish, filed a petition in the Orleans Parish Civil District Court objecting to the candidacy of Appellee/Defendant, Diedre Pierce Kelly ("Ms. Kelly"), a candidate running for the position of Orleans Parish Criminal District Court Judge, Section "K". In addition, Appellant/Petitioner, C. Gary Wainwright ("Mr. Wainwright"), who qualified to run for the vacancy in Section "K," of the Criminal District Court, and who is a registered voter in Orleans Parish, filed a petition challenging the candidacy of Ms. Kelly.[2] The matters were consolidated and a trial was held on August 4, 2020. After taking the matter under advisement, the district court issued a judgment, later that same day at 6:15 p.m., overruling Mr. Newhart's and Mr. Wainwright's ("Petitioners") petitions and provided written reasons. From this judgment, Petitioners timely sought appellate review.

For reasons discussed below, we affirm the district court's judgment.

---

[2] The Honorable Arthur A. Morell, Clerk of Court for Orleans Parish Criminal District Court, was also named as a defendant in both petitions, pursuant to La. R.S. 18:1402(A)(2).

2

## FACTUAL AND PROCEDURAL HISTORY

On July 22, 2020, Ms. Kelly filed a Notice of Candidacy form, declaring her candidacy for Judge, Criminal District Court, Section "K." The notice was sworn before a notary as required by law. Ms. Kelly certified, "I have read this Notice of Candidacy and I meet the qualifications of office for which I am qualifying."[3] The primary election is set for November 3, 2020, and the general election is set for December 5, 2020.

Petitioners filed petitions objecting to Ms. Kelly's candidacy on the grounds that Ms. Kelly did not meet one of the qualifications set forth in Louisiana Constitution Article 5, § 24, which provides that to qualify for district court judge one "shall have been admitted to the practice of law in the state" for eight years. *See* La. R.S. 18:492.[4] Petitioners asserted that due to Ms. Kelly's suspension from the practice of law, she would fall short of the eight-year requirement at the time of the election. In addition, Petitioners complained that Ms. Kelly failed to file a Form 100, as required by Judicial Code of Conduct, Canon 7 and La. R.S. 18:1491.1 *et. seq.*

Ms. Kelly was admitted to the Louisiana State Bar on October 20, 2011. On April 2, 2015, the Louisiana Supreme Court suspended Ms. Kelly from practicing

---

[3] La. R.S. 18:463 sets forth requirements for the notice of candidacy form and includes the requirement that a certificate shall be signed by the candidate, certifying particularly that the candidate meets the qualifications of the office for which he is qualifying. If a material error is made in the notice of candidacy form, disqualification of candidacy may result.

[4] La. R.S. 18:492 provides, in part:

> A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:
>
> * * *
>
> (3) The defendant does not meet the qualifications for the office he seeks in the primary election.

law for one year and one day for violating Rules of Professional Conduct, Rules 8.1[5] and 8.4.[6] *In re Kelly*, 15-0414, p. 1 (La. 4/2/15), 164 So.3d 815, 815-816.

On June 20, 2016, Ms. Kelly, through her counsel, filed in the Louisiana Supreme Court, a petition for "reinstatement/readmission" pursuant to Louisiana Supreme Court Rule 19, § 24. On November 15, 2016, almost five months later, the Louisiana Supreme Court granted Ms. Kelly's petition writing in part:

> Upon review of the recommendation of the disciplinary board's adjudicative committee chair, and considering the record, it is ordered that Diedre Pierce Kelly, Louisiana Bar Roll number 34031, be immediately *reinstated* to the practice of law in Louisiana, subject to the conditions set forth in this opinion. . . . (emphasis added).

*In re Kelly*, 16-1810, pp. 1-3 (La. 11/15/16), 206 So.3d 176, 176-77.

During the time of her suspension, 2015 and 2016, Ms. Kelly paid her bar dues and complied with her mandatory continuing legal education requirements.

Ms. Kelly testified at trial that she filed a Statement of Organization, Form 200, with the Louisiana Board of Ethics to form a campaign committee. She acknowledged that she had not filed a Form 100 and explained that she was not required to do so.

After taking the matter under advisement, the district court overruled the petition and issued written reasons, which concluded that Ms. Kelly met the eight-year candidacy requirement of La. Const. art. 5, § 24 and that the Campaign Finance Disclosure Act did not require candidates to file Form 100. This appeal follows.

---

[5] Rule 8.1(a) provides that an applicant for admission to the bar shall not "[k]nowingly make a false statement of material fact."

[6] Rule 8.4(a) provides that it is professional misconduct to knowingly violate the Rules of Professional Conduct.

**DISCUSSION**

In challenging the district court's judgment, Petitioners assert that the district court erred in failing to disqualify Ms. Kelly as a candidate for the office of Judge, Criminal District Court, Division "K," as she does not meet the eight-year qualification period of being "admitted to the practice of law," as required by La. Const. art. 5, § 24. Petitioners contend that Ms. Kelly fails to meet the qualification of "shall have been admitted to the practice of law in the state" for eight years as a result of her suspension from the practice of law which should not count toward the accrual of the eight-year requirement. In opposition, Ms. Kelly responds that her suspension did not affect the number of years she had been admitted to the practice of law, as her bar license was never revoked. Thus, she has the requisite number of years to qualify as judge.

In addition, Mr. Newhart complains that the district court erred in failing to disqualify Ms. Kelly for the office of Judge, Criminal District Court, Division "K," pursuant to La. R.S. 18:492(A)(1), which states a candidate may be disqualified for failing to "qualify for the primary election in the manner prescribed by law," as Ms. Kelly failed to file her Form 100, and therefore made a false statement on her Notice of Candidacy. In response, Ms. Kelly argues that she was not required to file a Form 100.

*Judges qualifications;*

Louisiana Constitutional Article 5, § 24, sets forth the qualifications for judge[7]:

---

[7]Article 5, § 24, was amended pursuant to 2006 La. Acts 860 (Act 860) and became effective January 1, 2008; previously, Article 5, § 24 provided there was a five-year requirement ("A judge . . . shall have been admitted to the practice of law in this state for at least five years prior to his election. . . .") which was amended to an eight-year requirement.

5

(A) A judge of the supreme court, a court of appeal, district court . . . shall have been domiciled in the respective district, circuit, or parish for one year preceding election and *shall have been admitted to the practice of law in the state* for at least the number of years specified as follows:

* * *

(2) For a district court . . . --eight years.

(emphasis added). Louisiana courts have held that the qualifications set forth for judicial candidates in La. Const. art. 5, § 24 are exclusive and neither the courts nor the legislature can add additional qualifications. *See Cook v. Campbell*, 360 So.2d 1193, 1196 (La. App. 1st Cir. 1978); *Knobloch v. 17th Judicial Dist. Democratic Exec. Com.*, 73 So.2d 433, 437 (La. App. 1st Cir. 1954); *Williams v. Ragland,* 567 So.2d 63, 68 (La.1990)(concurring opinion, J., Dennis); and *Elie v. Karst*, 594 So.2d 929, 932 (La. App. 4th Cir. 1992)(dissenting opinion, J., Jones).

There are no factual issues in dispute. The issue to be resolved involves a question of law; specifically, the interpretation of "*shall have been admitted to the practice of law in the state*" for eight years. (emphasis added)

"[Q]uestions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the *de novo* standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute." *Jarquin v. Pontchartrain Partners, L.L.C.*, 19-0737, p. 7 (La. App. 4 Cir. 1/22/20), 289 So.3d 1129, 1134.

The Louisiana Constitution is the supreme law of this state, to which all legislative acts must yield. *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund*, 05-2548, p. 13 (La. 10/1/07), 986 So.2d 1, 13. "As a general rule, articles of the constitution are to be construed and interpreted using the same canons of interpretation applicable to statutes and written instruments. *Id*., 05-2548, p. 17, 986 So.2d at 15. In interpreting a statute, or in this case a constitutional article, it is well settled that "'[w]hen a law is clear and

6

unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent.'" *New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 17-0320, p. 9 (La. App. 4 Cir. 3/21/18), 242 So.3d 682, 691 (citing *in re Succession of Boyter*, 99-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1128-29). However, if a statute is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary. *Id.*, 17-0320, pp. 9-10, 242 So.3d at 691 (citing *Burnette v. Stalder*, 00-2167, p. 6 (La. 6/29/01), 789 So.2d at 577). *See also*, *Johnson v. Harrison*, 14-0932 (La. App. 4 Cir. 9/3/14), 150 So.3d 30.

In this case, the parties differ on the interpretation of "shall have been admitted to the practice of law in the state" set forth in La. Const. art. 5, § 24. As this provision is susceptible to more than one reasonable interpretation, as pointed out by the parties, statutory construction is necessary.[8]

---

[8] In *New Orleans Fire Fighters Pension & Relief Fund*, 17-0320, pp. 11-12, 242 So.3d at 691-92, this Court set forth the rules of statutory construction:

> First, "[t]he rule that legislation is the solemn expression of the legislative will and, therefore, the interpretation of a law primarily involves the search for the legislature's intent (citations omitted)." *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund,* 05-2548, p. 20 (La. 10/1/07), 986 So.2d 1, 16. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10; *Fontenot v. Reddell Vidrine Water Dist.*, 02-439, p. 7 (La. 1/14/03), 836 So.2d 14, 20. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. C.C. arts. 12 and 13; *Conerly v. State*, 97-0871, p. 4 (La. 7/8/98), 714 So.2d 709, 711. "The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter." La. C.C. art. 11. Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were used. *Colvin v. Louisiana Patient's Compensation Fund Oversight Bd.*, 06-1104, p. 6 (La. 1/17/07), 947 So.2d 15, 19 (citing *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112, 1119). Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage "if a construction giving force to and preserving all words can legitimately be found." *Id.*, 06-1104, p. 6, 947 So.2d at 19-20.

In addition to the precepts on statutory construction, Louisiana courts have held that the laws governing the conduct of elections must be liberally construed to promote, rather than defeat candidacy, and any doubt as to the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Eugene v. Davenport*, 14-0953, p. 4 (La. App. 4 Cir. 9/9/14), 150 So.3d 56, 59. *See also*, *Slocum v. DeWitt*, 374 So.2d 755, 758 (La. App. 3rd Cir. 1979)(citations omitted)(wherein the appellate court opined that that laws governing the conduct of elections should be liberally interpreted so as to promote rather than defeat candidacy, and noted that "[a]fter all, [the candidate] still has to face the voters who will, and should, exercise the final judgment on his candidacy.")

There are no reported cases interpreting "shall be admitted to the practice of law" in the context of the issue presented in this case. Thus, we reviewed cases by this Court, as well as the Second Circuit, interpreting other issues that have arisen under judges' qualifications as provided for Article 5, § 24, for guidance.

In *Johnson v. Harrison*, 14-0932 (La. App. 4 Cir. 9/3/14), 150 So.3d 30, the petitioner sought appellate review of the district court's denial of petitioner's motion to disqualify Taetrece Harrison, a candidate for district court judge. Petitioner asserted that at the time Ms. Harrison qualified as a candidate, she had not been practicing law for eight years. This Court found that La. Const. art. 5, § 24, "shall have been domiciled . . . for one year proceeding the election and shall have been admitted to the practice of law in the state," as written, was ambiguous. Specifically, this Court noted that "the language is susceptible to two meanings: 1) both the domicile and the admission requirements must be met "preceding election," or 2) only the domicile requirement must be met "preceding election."

*Id.*, 14-0932, p. 5, 150 So.3d at 34. Next, this Court looked to the legislative intent for guidance:

> An additional provision in Act 860 provided that the proposed amendment to the constitutional article [La. Const. art. 5, § 24] would be submitted to Louisiana voters during a statewide election. *See* 2006 La. Acts 860, Section 2. It further set forth the language on the official ballot, in relevant part, as follows:
>
> > To provide that a person shall have been admitted to the practice of law for ten years **preceding election** to the supreme court or a court of appeals and for eight years **preceding election** to a district court, family court, parish court, or court having solely juvenile jurisdiction . . .
>
> 2006 La. Acts 860, Section 3 (emphasis supplied). After reviewing Act 860 in its entirety, it is clear that the legislature intended that both the domicile and the admission requirements be met before the election. Further, where there are two viable interpretations of the constitutional article, we must lean towards the interpretation that favors candidacy.
>
> Since the defendant will have been admitted to practice law in this State for more than eight years prior to both the date of the primary and the general election established for the office of district judge, she meets the qualifications established by the Constitution for the office she seeks. Therefore, the petition objecting to her candidacy was properly denied.

*Johnson*, 14-0932, p. 5, 150 So.3d at 34. In a concurrence, Judge Landrieu, expounded on the purpose of the 2006 constitutional amendment which increased the qualification for the number of years from five to eight for district court judges:

> The law providing the qualifications for running for judicial office is not the picture of clarity. However, it is reasonable to conclude that the 2006 constitutional amendment to Article V, Section 24 was designed to do two things: (1) reduce the domicile requirement of a candidate for judicial office from two years to one year; and (2) increase the number of years a candidate is required to have been admitted to the practice of law from five years to eight years. Nothing more. The joint resolution placing this issue before the voters is clear on these points.

*Id.*, 14-0932, p. 6, 150 So.3d at 38.

In *Elie v. Karst*, 594 So.2d 929 (La. App. 4 Cir. 1992), which is cited by the parties and referenced by the district court judge, the judicial candidate was

9

suspended from the practice of law by the Louisiana Supreme Court, *at the time he was qualifying* and the suspension would continue through election day.[9]  At that time, La. Const. art. 5, § 24, provided that "a judge of . . . a court of appeal . . . shall have been admitted to the practice of law in this state for at least five years prior to his election. . ." Previously, La. Const. art. 7 § 22 (1921) provided that to qualify for judge one had to be ". . . licensed to practice law in the state for at least six years immediately preceding their election. . . ."  This Court rejected the defendant's argument that although he was not "licensed" as a result of his suspension, he retained his admission to the bar despite the suspension.   In addition, this Court interpreted "admitted" in Article 5, § 24 to mean eligible to practice explaining that "[t]his interpretation is supported by the Supreme Court's use of the term 'readmission' in its decree of suspension, and  [i]f defendant were presently 'admitted' to the practice 'readmission' would be unnecessary." *Id.* at 930. The *Elie* court concluded that "[w]e subscribe to this view that a lawyer who *is* suspended from the practice of law is not qualified under the constitution to run for judge." (emphasis added). *Id.*

The *Elie* court relied on *Gamble v. White,* 566 So.2d 171 (La. App. 2d Cir.1990), where an identical issue was resolved. In *Gamble*, the trial court disqualified a candidate running for district court judge; the candidate, like in *Elie*, was suspended from the practice of law *at the time of qualifying* and at the time of election.  In addition, the candidate retained his bar admission and was admitted to the bar for more than the five years at the time of qualifying.  The Second Circuit affirmed the trial court's judgment concluding that the qualification in Article 5, § 24 that a candidate for district judge "shall have been admitted to the practice of law in this state for at least five years prior to his election" mandated that the

---

[9] In its Order suspending the defendant, the Louisiana Supreme Court provided that "Respondent Karst is suspended from the practice of law for one year, his readmission to be predicated upon proof of rehabilitation." *Louisiana State Bar Ass'n v. Karst*, 428 So.2d 406, 412 (La. 1983).

candidate be admitted to practice in this state *at the time immediately prior to his election* and for a total preceding period of at least five years.

Unlike the candidates in *Elie* and *Gamble*, Ms. Kelly was no longer on suspension at the time she qualified. Furthermore, the *Elie* Court's interpretation of "admitted to the practice of law" in Article 5, § 24 to mean eligible to practice does not resolve the issue in this case particularly in light of commentary of the Supreme Court accompanying the order dated July 19, 2001 which amended Louisiana Supreme Court Rule XIX (RULES FOR LAWYER DISCIPLINARY ENFORCEMENT). The commentary stated:

> In adopting these amendments to Rule XIX, the Court has carefully considered the differences between the sanctions of disbarment and suspension, which differences are both substantive and significant. A suspended lawyer remains a lawyer during the period of suspension, retains a license to practice, but cannot practice law during the term of the suspension. However, one who has been disbarred loses his license to practice law. . . .

Moreover, Black's Law Dictionary defines "admission to practice law" as an "[a]cceptance of a lawyer by the established licensing authority, such as a state bar association, as a member of the practicing bar." BLACK'S LAW DICTIONARY (11th ed. 2019). Whereas, the practice of law is defined as:

> "[t]he professional work of a duly licensed lawyer, encompassing a broad range of services such as conducting cases in court, preparing papers necessary to bring about various transactions from conveying land to effecting corporate mergers, preparing legal opinions on various points of law, drafting wills and other estate planning documents, and advising clients on legal questions"

BLACK'S LAW DICTIONARY (11th ed. 2019). *See* also La. R.S. 37:212. We conclude that the commentary, as well as the plain meaning of the definitions of admission to practice law and the practice of law, lend support that Ms. Kelly met the eight-year qualification of "shall have been admitted to the practice of law in the state" because she retained her admission and license to the bar.

Despite Petitioners' persuasive arguments, we conclude that this ambiguous portion of La. Const. art. 5, § 24, "shall have been admitted to the practice of law of the state" for eight years, must be interpreted in favor of candidacy. *See Committee to Re-elect Judge Chip Moore*, 20-0091 (La. 7/24/20), __ So.3d __ 2020 WL 4437418 (citing *Landiak v. Richmond*, 05-0758 (La 3/24/05), 899 So.2d. 535, 541 ("election laws must be interpreted to give the electorate the widest possible choice of candidates.").

*Designation of Principal/Subsidiary Campaign Committees ("Form 100")*

Petitioners complain the district court erred by failing to disqualify Ms. Kelly for the office of Judge, Criminal District Court, Division "K," pursuant to La. R.S. 18:492(A)(1), which states a candidate may be disqualified for failing to "qualify for the primary election in the manner prescribed by law." Petitioners explain that since Ms. Kelly failed to file her Designation of Principal/Subsidiary Campaign Committees ("Form 100"), she made a false statement on her Notice of Candidacy. Mr. Newhart maintains that Ms. Kelly's failure to file Form 100 was a violation of the Campaign Finance Disclosure Act pursuant to La. R.S. § 18491.1 *et seq*. and the Judicial Code of Conduct, Canon 7(A)(6).[10]

We pretermit discussion of this assigned error as any alleged violations do not fall under this court's jurisdiction.[11]

**CONCLUSION**

---

[10] Judicial Code of Conduct, Canon 7(A)(6) provides that a judicial candidate shall not personally solicit or personally accept campaign contributions.

[11] The Campaign Finance Disclosure Act provides that "[t]he Board of Ethics, as established . . . shall function as the supervisory committee to administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder." *See* La. R.S. § 18:1511.1.

Louisiana Supreme Court Rule XXXV § 3 provides that "complaints concerning judicial campaign conduct shall be forwarded in writing" to the Judicial Campaign Oversight Committee.

Considering the forgoing discussion, the district court's judgment is affirmed.

**AFFIRMED**