660 So.2d 194 (1995)
Floyd J. LANDRY, Sr.
v.
ROBERSON ADVERTISING SERVICE, INC. d/b/a "The St. Bernard News", Michael E. Roberson, Sr., and Norman D. Otillio.
No. 95-CA-0095.
Court of Appeal of Louisiana, Fourth Circuit.
August 23, 1995.
Rehearing Denied September 26, 1995.
*195 Alvin J. Bordelon, Michael P. Arata, Bordelon, Hamlin & Theriot, New Orleans, for appellant.
J. Price McNamara, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for appellee, Norman D. Otillio.
John G. Gomila, Jr., Roderick K. West, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellee, William D. Patch.
James L. Donovan, Donovan & Lawler, Metairie, for appellee, Prudential Property & Casualty Co.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
CIACCIO, Judge.
In this suit for defamation, plaintiff appeals from two judgments of the trial court which grant defendants' motions for summary judgment.[1] We affirm.

Factual Background
Plaintiff, Floyd J. Landry, Sr., was a candidate in the 1991 campaign for the election of St. Bernard Parish president. On October 16, 1991, a half-page political advertisement entitled "An Open Letter to Ron Haggerty and Floyd Landry" appeared in the St. Bernard Parish News. The advertisement was delivered to the newspaper several days earlier by Norman Otillio, a campaign volunteer for one of plaintiff's opponents in the race, William D. Patch. The advertisement indicated it was placed by "Concerned Citizens of St. Bernard" and accused Landry of certain unlawful and unethical conduct.
On October 17, 1991, plaintiff filed this suit for damages against Roberson Advertising, Inc, d/b/a The St. Bernard Parish News, Michael E. Roberson, Sr., and Norman D. Otillio for defamation and violation of the state election code. Plaintiff subsequently amended his petition to include as defendants Prudential Property and Casualty Insurance Company, the homeowner insurer of Otillio, as well as William D. Patch, and Patch's homeowner insurer, Liberty Mutual Insurance Company.
Several depositions were taken in this matter and were introduced into evidence on the motions for summary judgment. The relevant facts contained therein are not disputed by the parties.
Norman Otillio stated he was a part-time volunteer in William Patch's 1991 campaign for parish president. His duties included making deliveries and cleaning campaign headquarters. Otillio admitted in his deposition that he delivered the advertisement to the St. Bernard Parish News, but denied knowledge of its contents. He gave the following rendition of how the advertisement was delivered to the newspaper:
On Friday, October 13, 1991, Otillio went to the Patch campaign headquarters and met another volunteer, Cheryl Cassard at the door. The two entered the office together and picked up the mail from the floor. A short time later Cassard gave Otillio a folder which was contained in the stack of mail. The folder contained the ad and hand-written instructions to deliver it to the St. Bernard Parish News. Attached to the folder was an envelope containing $500.00 in cash. However, Otillio stated that he did not open either the folder or the envelope and was not aware *196 of the contents until he arrived at the newspaper office.
Cassard called for directions to the St. Bernard Parish News and gave these instructions to Otillio. When he arrived at the newspaper office, Otillio tried to deliver the materials to the receptionist, but was told he had to speak with the editor of the newspaper, Mr. Joe Chambers. Otillio then met with Chambers and gave him the folder. Chambers opened the folder and read the advertisement. He then told Otillio that "this is some pretty strong stuff" and that it would have to be researched before it was placed in the paper.
Chambers then asked Otillio who was paying for the ad, and Otillio gave a fictitious name, "David Norman," as he did not know what the ad was about and did not want to use his own name. Otillio also gave Chambers his true name and address, but told Chambers that the fictional "David Norman" was paying for the ad. Otillio gave Chambers the $500.85 which was contained in the envelope. Otillio also gave Chambers the address and telephone number of his disabled brother as the address of David Norman, in case Chambers tried to contact him after the research on the ad was completed. According to Otillio, Chambers told him he would not run the ad without further research, and Otillio thought Chambers might try to return the money if he decided not to print the ad.
Otillio testified that he had never written a campaign ad, and did not make any political strategy decisions for the Patch campaign. He stated he did not know whose idea it was to place the ad, or who actually prepared it and paid for it.
The deposition of Joe Chambers contains a similar version of the factual situation pertaining to the placement of this advertisement. Chambers testified that an individual whom he did not know came to his office with an advertisement and with the exact amount of money necessary to place the ad. Chambers stated that the individual identified himself as Norman Otillio, but gave the name of David Norman as the person paying for the ad. Chambers stated he requested further documentation from Otillio to support the allegations of the advertisement, and according to Chambers, Otillio indicated he would provide it. Chambers testified he told Otillio that the ad could not be placed without further documentation. Although Chambers never received any further documentation, according to Chambers, the ad was subsequently published "by mistake."
William Patch testified in deposition that he was out of town at the time the ad was brought to the newspaper and at the time it was published. He stated his wife read it to him over the telephone while he was in Washington, D.C. on business for his employer. Patch stated he did not prepare or pay for the ad, and did not know who did. He testified that he had a friendly relationship with Floyd Landry.
The record also contains copies of portions of the deposition taken of plaintiff, Floyd Landry, in which he states that he was a candidate for the office of St. Bernard Parish President. Landry stated that he first became aware of the subject advertisement when it came out in the newspaper, and that he was unaware of who placed the advertisement. He stated he did not know Norman Otillio.
After conducting discovery, defendants Otillio and Patch filed motions for summary judgment on the grounds that plaintiff could not produce evidence of sufficient quality and quantity to demonstrate that he would likely prove the elements of defamation by clear and convincing evidence. The trial court granted both motions, dismissing plaintiff's suit against Otillio and Patch. Plaintiff now devolutively appeals from these judgments.

Standard of Review and Applicable Law
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Maurice v. Snell, 632 So.2d 393 (La.App. 4th Cir.), writ denied, 637 So.2d 507 (La.1994).
A motion for summary judgment is properly granted only if the pleadings, depositions, *197 answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. In general, the burden is on the mover in a summary judgment case to establish that no material fact issues exist prior to granting the motion. Schroeder, supra.
However, plaintiffs in defamation cases must demonstrate at an early stage that they can meet their burden at trial. Although Louisiana has a strong preference for full trial on the merits, this rule is not applicable in defamation cases. This elevated standard of review of a motion for summary judgment in a defamation case has recently been addressed by our Supreme Court in Sassone v. Elder, 626 So.2d 345 (1993):
[I]n order to survive a motion for summary judgment, a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he likely will be able to meet his burden of proof at trial. Without such evidence, there is no genuine issue of material fact, and summary judgment should be granted.

Id., at 351.
The Supreme Court in Sassone overruled a decision of a panel of this Court which determined that there is a no higher summary judgment standard placed on plaintiffs in defamation cases than in other cases. The Supreme Court stated:
Therefore, while in the federal system the standard for summary judgment may be the same in all cases, there is a different standard in Louisiana in defamation cases because of the constitutional considerations in such cases. Because a media defendant's having to go to a full trial in multitudes of nonmeritorious defamation claims would certainly stifle the constitutional guarantee of freedom of the press, the rule in other summary judgment cases favoring trial on the merits is simply not applicable in defamation cases.

Id., at 352.
Although the defendants in this case are individual defendants rather than "media defendants" present in the Sassone case, the rationale of Sassone in preventing harassment of defendants by nonmeritorious actions threatening free speech is nevertheless applicable to this case for defamation.
In order to prevail in a case of defamation under the Louisiana law, the plaintiff must prove five elements: defamatory words; publication; falsity; malice, actual or implied; and resultant injury. Navis v. Times-Picayune Pub. Corp., 631 So.2d 1338 (La.App. 4 Cir.1994) citing Williams v. Touro Infirmary, 578 So.2d 1006 (La.App. 4th Cir. 1991). Further, the law is well-settled that a public figure may not recover damages for a defamatory falsehood without clear and convincing proof that the false statement was made with "actual malice." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26, 11 L.Ed.2d 686 (1964). The New York Times "actual malice" standard equally applies to media and non-media defendants. See, Wattigny v. Lambert, 453 So.2d 1272, 1274 (La.App. 3rd Cir.1984), appeal after remand, 490 So.2d 1115 (La.App. 3rd Cir.1986), writ denied, 493 So.2d 1221 (La.1986).
Actual malice is defined as knowledge that the statement is false or made with reckless disregard for whether it is false or not. New York Times, supra, 376 U.S. at 279, 84 S.Ct. at 726. Actual malice has been further defined in Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562, wherein the United States Supreme Court stated:
Actual malice, instead, requires at a minimum that the statements were made with a reckless disregard for the truth. And although the concept of "reckless disregard" cannot be fully encompassed in one infallible definition, we have made clear that the defendant must have made the false publication with a high degree of awareness of ... probable falsity or must have entertained serious doubts as to the truth of his publication.

Id., at 667, 109 S.Ct. at 2686; (Emphasis added); (Citations omitted).
*198 A "reckless disregard" for the truth requires more than a departure from reasonable prudent conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Connaughton, supra, 491 U.S. at 687, 109 S.Ct. at 2696.
The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law. Connaughton, supra, 491 U.S. at 686, 109 S.Ct. at 2695.

Analysis and Discussion
In their motions for summary judgment, defendants focus on the requirement of malice, arguing that regardless of the proof of the other elements in a defamation case, plaintiff failed to produce sufficient evidence to show that either Otillio or Patch caused the advertisement to be published with actual malice. Even assuming plaintiff can meet his burden of proving the statements in the advertisement were false, plaintiff must nevertheless prove that defendants acted with malice in placing this advertisement for publication.
There is no dispute in the present case that at the time of the publication of the ad, Landry was a public figure, as one running for public office while serving as a police juror on the St. Bernard Parish Police Jury. In order to defeat defendants' motions for summary judgment, plaintiff must show that a judge or jury could reasonably conclude by clear and convincing evidence that either Otillio or Patch entertained serious doubt as to the statements made in the ad or had a high degree of awareness of their probable falsity.
In support of their motions for summary judgment, defendants rely on the deposition testimony of Patch and Otillio in which both men state that they had no knowledge of the contents or the veracity of the subject advertisement.
In opposition to the motions, plaintiff introduced the deposition testimony of defendant Norman Otillio. Plaintiff contends that summary judgment is inappropriate in this case as factual issues remain unresolved. Specifically, plaintiff argues that the credibility of Norman Otillio is seriously in dispute, given Otillio's deposition testimony in which he admits that he deceived the editor of the newspaper regarding who was paying for the subject advertisement. Plaintiff argues that because Otillio's credibility could be called into question, the trial court was obliged to resolve any issues arising from Otillio's credibility in favor of plaintiff.
However, even resolving all doubts in Otillio's testimony in favor of plaintiff, we find insufficient evidence in the record to show that either Otillio or Patch possessed the required actual malice necessary to support a claim for defamation. While the statements made in the advertisement may or may not be false, the depositions relied on shed no light on the crucial issue herein, i.e., whether Otillio or Patch entertained serious doubt as to the truth of the statements. The record in this case fails to contain any evidence to show that either Otillio or Patch acted with reckless disregard for the truth or were aware of the likelihood that they were submitting false information for publication.
Defendant Patch denied any knowledge of the ad or its contents, and although plaintiff relies on evidence that the ad originated from the Patch campaign headquarters, there has been no showing that Patch personally prepared the ad, directed its publication or knew its allegations to be false. We find that plaintiff has failed to sustain his burden of showing the existence of actual malice as to William Patch.
Further, with regard to plaintiff's claim against Norman Otillio, we fail to find sufficient evidence to show that Otillio placed the ad in the newspaper with actual malice. Even assuming that Otillio's testimony that he did not read the ad nor was he aware of its contents is false, plaintiff nevertheless failed to sufficiently prove that Otillio had knowledge of the falsity of the allegations in the ad or acted with reckless disregard for the truth. In fact, Otillio stated in his deposition that he had no reason to know whether the allegations contained in the advertisement were true or not. Although a reasonably prudent person may have read the advertisement *199 and investigated it further prior to submitting it for publication, Otillio's failure to do so does not create a question of material fact as to actual malice. Our review of the record indicates that plaintiff has failed to present evidence of sufficient quality and quantity to demonstrate that Otillio placed this advertisement for publication in the newspaper with a high degree of awareness of probable falsity or entertained serious doubts as to the truth of the publication.

Conclusion
We conclude that the pleadings, answers to interrogatories and depositions in the record fail to establish an issue of material fact with regard to the question of actual malice. Plaintiff has failed to establish that defendants were aware of the probable falsity of the statements made in the advertisement. Accordingly, for the reasons stated herein, we find that plaintiff failed to sustain his burden of producing evidence of sufficient quality and quantity to establish that he would likely be able to meet his burden of proof of trial. Defendants are entitled to a judgment as a matter of law. We therefore affirm the trial court's judgment granting defendants' motions for summary judgment and dismissing plaintiff's suit against them. Appellant shall bear all costs of this appeal.
AFFIRMED.
LANDRIEU, Judge, concurring in part and dissenting in part.
The majority cites the language of the Supreme Court in Sassone v. Elder, 626 So.2d 345 (La.1993) in support of its position. A more careful reading of that opinion reveals that all the Court said was that in media defamation cases, there is no bias favoring trial on the merits. It made no pronouncement about non-media defendants and did not alter the burden which every plaintiff faces in a summary judgment hearing.
This is a tort case and plaintiff at trial must prove the elements of that tort: defamatory words, publication, falsity, malice and injury. The only question before us is the question of malice and whether a jury could reasonably believe that Mr. Otillio caused the ad to be published when he knew it was false or recklessly disregarded whether it was false or not.
I have no doubt that a rational juror, based on the evidence in the record of the summary judgment proceedings, could so find. Mr. Otillio delivered the ad and money for publication, gave a false name as President of Concerned Citizens of St. Bernard and a false address, all for the purpose of concealing his involvement and that of the Patch campaign. Why? Could a reasonable juror not believe that he did so because he knew the ad was false or simply did not care if it was false? Knowledge and intent almost always are inferred from circumstances even in criminal cases where the burden of proof is beyond a reasonable doubt. See State v. Williams, 93-K-2707 (La.1994), 633 So.2d 147, 149.
Accordingly, I would sustain the judgment of the trial court dismissing the action against defendant, William D. Patch, but would reverse the judgment of the trial court in favor of defendant, Norman D. Otillio, and remand the case for trial on the merits.
NOTES
[1] A third summary judgment in favor of defendant Prudential Property and Casualty Company was entered by the trial court. Plaintiff also appealed from that judgment and briefs were filed. However, on motion of both parties, this appeal was dismissed by this court on June 16, 1995 and therefore will not be addressed in this opinion.