PARRO, J.
12The Louisiana Board of Ethics seeks review of a district court judgment that dismissed its action in which it sought civil penalties against a candidate for alleged violations of the Campaign Finance Disclosure Act. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
In 2011, Melvin “Kip” Holden, Mayor of the City of Baton Rouge and President of East Baton Rouge Parish, filed his 2010 supplemental campaign finance report with the Louisiana Board of Ethics, acting in its capacity as the Supervisory Committee on Campaign Finance Disclosure (the Board).[2] The report disclosed three donations, among others, made by Mayor Holden from excess campaign contributions, as follows: 1) $500 to the family of Brittni Boatner to help pay her funeral costs; 2) $197 to the Congressional Youth Leadership Council (CYLC); and 3) $500 to the People to People Ambassadors Program (PPAP). Following an investigation, the Board filed a petition for a rule to show cause[3] with the Nineteenth Judicial District Court for the Parish of East Baton *115 Rouge,[4] alleging that the three donations violated LSA-R.S. 18:1505.2(I)(1) of the Campaign Finance Disclosure Act (CFDA).
Following a hearing, the district court found that Mayor Holden’s donations were made in accordance with LSA-R.S. 18:1505.2(I)(1) and dismissed the Board’s petition, with prejudice. The Board has appealed, assigning the following errors:
1. The District Court erred in finding that the expenses for the Boatner Funeral, Tya Wicker/CYLC and Davis C. Hotard/PPAP were “related to the holding of public office.”
|s2. The District Court erred in finding that the expenditures made to Tya Wicker/CYLC and Davis C. Ho-tard/PPAP were acceptable contributions of campaign funds under 26 USC 170(c).
3. The District Court erred in qualifying and allowing Mr. William Potter, as an expert witness, to interpret the law, La. R.S. 18:1505.21(1).
DISCUSSION
The Louisiana Legislature recognized that the effectiveness of representative government is dependent upon a knowledgeable electorate and upon the confidence of the electorate in their elected public officials. The legislature, therefore, enacted the CFDA to provide public disclosure of the financing of election campaigns and to regulate certain campaign practices. See LSA-R.S. 18:1482.
At issue in this case is the interpretation of LSA-R.S. 18:1505.2(I)(1), which provides, in pertinent part:
On and after January 1, 1991, contributions received by a candidate or a political committee may be expended for any lawful purpose, but such funds shall not be used, loaned, or pledged by any person for any persona! use unrelated to a political campaign, the holding of a public office or party position, or, in the case of a political committee, other than a candidate’s principal campaign committee or subsidiary committee, the administrative costs or operating expenses of the political committee; except that excess campaign funds may be returned to contributors on a pro rata basis, given as a charitable contribution as provided in 26 USC 170(c), given to a charitable organization as defined in 26 USC 501(c)(3)....
At the hearing, Mayor Holden, with regard to the funeral expenses of Brittni Boatner, testified that he had known Britt-ni’s father his entire life and the Boatner family had come to him because they could not afford to bury their daughter, who had been murdered. Mayor Holden testified that since he had some resources, “I did not hesitate to make that check.”
The second expenditure at issue, to CYLC, was made to sponsor a councilwoman’s daughter’s trip to Washington, D.C. with the group. Mayor Holden explained that the CYLC is “an education program that allows people from around the country to go in and actually see firsthand the workings of |4Congress itself, and basically how bills are made, how they are drafted, the committee system.”
The third expenditure at issue was a donation given to PPAP.[5] Mayor Holden explained that PPAP was an organization that afforded children the opportunity to visit other parts of the world and communicate with other people. Mayor Holden *116 indicated that the experiences the program offered the children broadened their opportunities.
Mayor Holden stated that he had a history throughout his twenty-plus years as an elected official of making donations to funerals from his excess campaign contributions and had also previously made donations to CYLC and PPAP from his excess campaign contributions. Mayor Holden testified that he did not seek the Board’s advice prior to making any of the three donations, because the Board had never challenged similar donations he had made in the past. Mayor Holden opined that he derived no personal benefit from these donations and believed that all three expenditures were related to his holding of a public office and his responsibilities as mayor.
Additionally, William Potter, a Certified Public Accountant and an attorney employed by the accounting firm of Post-lethwaite and Netterville, who prepares and files reports under the CFDA, was accepted by the trial court as an expert in the field of Internal Revenue Service rules and regulations and compliance with the CFDA. Mr. Potter, when questioned about the three expenditures at issue, testified that if he “were advising somebody, based on my knowledge and practice, I would have told them I would have thought [the expenditures were] okay at this time.” When specifically questioned as to whether an expenditure for an indigent funeral is related to the holding of public office, Mr. Potter explained that “a lot of people running for public office feel that the best expenditure of their funds to help get elected and to maintain their position in office is to spend funds directly with the constituents, and you can see that 15across the reports that are filed out there.” Mr. Potter noted that in many campaigns, “expenditures are more constituent-based whereas in other campaigns you may see more spent on advertising.” Mr. Potter indicated that a candidate has to ensure that the expenditure is “not for a relative or somehow [a] personal expenditure.”
The Board asserts that the district court erred in qualifying Mr. Potter as an expert. A district court is accorded broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. LSA-C.E. art. 702, Official Comment (d). A district court’s decision to qualify an expert will not be overturned absent an abuse of discretion. Cheairs v. State Dep’t of Transp. and Dev., 03-0680 (La.12/3/03), 861 So.2d 536, 540-41. Moreover, the effect and weight to be given expert testimony is within the broad discretion of the district court. Louisiana State Bar Ass’n v. Carr and Assoc., Inc., 08-2114 (La.App. 1st Cir.5/8/09), 15 So.3d 158, 171, writ denied, 09-1627 (La.10/30/09), 21 So.3d 292. We note that Mr. Potter’s testimony focused on the Board’s general custom and usage regarding the CFDA and how he advises his clients regarding that statute. After review of the record, we cannot conclude that the district court abused its discretion in qualifying Mr. Potter as an expert.
The Board avers that Mr. Potter, however, was also allowed to interpret the law, which it contends is contrary to the principle that the judge is the sole arbiter of the law. While expert testimony is not permitted to address domestic law, the allowance of such testimony is generally harmless error in a judge trial. Succession of Allison, 31,495 (La.App. 2nd Cir.1/29/99), 727 So.2d 683, 684 n. 1, writ granted, case remanded on other grounds, 99-0595 (La.3/24/00), 757 So.2d 647. See also Louisiana State Bar Ass’n v. Carr and Assoc., Inc., 15 So.3d at 171 n. 14. *117 Accordingly, the Board’s third assignment of error is without merit.
The Board argues that the expenditures at issue were made in violation of the CFDA, because they were made for personal reasons unrelated to the | ^holding of public office. The Board avers that Mayor Holden’s testimony makes it clear that the expenditures were made to help people who did not have sufficient means, and not because they were related to Mayor Holden’s holding the office of mayor. The Board asserts that, while helping those in need is a noble cause, it is not in keeping with the plain language of LSA-R.S. 18:1505.2(I)(1), the spirit of the law, or public policy.
The Board notes that the federal government provides a similar restriction on the use of campaign funds in federal elections and allows funds to be “used for any other lawful purpose, unless such use is personal under 11 CFR 113.1(g).” See 11 CFR § 113.2(e). Specifically, 11 CFR § 113.1(g) defines “personal use” of campaign funds, using the “irrespective test.” This test prohibits “any use of funds in a campaign account of a present or former candidate to fulfill a commitment, obligation or expense of any person that would exist irrespective of the candidate’s campaign or duties as a Federal officeholder.”[6] The Board avers that using the “irrespective test,” the expenditures by Mayor Holden would exist even if he were not ■ in office, insofar as Mayor Holden indicated that he felt obligated to make these expenditures as “a matter of a heart, and a mind, and feelings for people.”
The Board cites some of its prior advisory opinions in which it concluded that similar uses of campaign funds violated the CFDA. Specifically, in La. Ethics Bd. Op. 1997-070, the Board concluded that campaign funds could not be used to purchase clothes for an underprivileged minor. In La. Ethics Bd. Op. 2007-786, the Board, in a consent opinion between the Board and a candidate for parish president, concluded that the candidate had violated the CFDA by making expenditures for funeral expenses and a fundraiser for a person suffering with cancer. In La. Ethics Bd. Op. 2007-787, which is a consent opinion between the Board and a legislator, the Board concluded that various donations were not 17appropriate uses of campaign funds, including donations to individuals for a mission trip.[7]
On the other hand, Mayor Holden contends that the Board has selectively enforced its own interpretation of the CFDA and does not consistently enforce its own advisory opinions on the subject. Mayor Holden notes that since 1999, the Board has challenged only two of 113 funeral donations made by elected officials from *118 excess campaign contributions. Additionally, 100 combined donations were made to CYLC and PPAP by at least 60 elected officials, including Mayor Holden, over the past eight years. As such, Mayor Holden concludes that it is fundamentally unreasonable and unfair for the Board to challenge these expenditures as violations of the CFDA, when these types of donations have been sanctioned by the Board’s own conduct.
The starting point in the interpretation of any statute is the language of the statute itself. City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 17. Words and phrases are to be read in their context and to be accorded their generally prevailing meaning. See LSA-C.C. art. 11; LSA-R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and the letter of it shall not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. See LSA-C.C. art. 9 and LSA-R.S. 1:4. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Because violations of the CFDA can result in the assessment of a civil penalty pursuant to LSA-R.S. 18:1511.5, the | ^statute is penal in nature and must be strictly construed. See Matter of Insulation Technologies, Inc., 95-1184 (La.App. 1st Cir.2/23/96), 669 So.2d 1343, 1350, writ denied, 96-0749 (La.5/3/96), 672 So.2d 692.[8]
Louisiana Revised Statute 18:1505.2(I)(1) allows a candidate to expend excess campaign contributions “for any lawful purpose, but such funds shall not be used, loaned, or pledged by any person for any personal use unrelated to ... the holding of a public office.” Unquestionably, the three expenditures at issue were made for lawful purposes. At issue is whether the contributions were made for personal use unrelated to the holding of a public office.
In concluding that the three expenditures were not violations of the CFDA, the district court reasoned:
Paramount to the duties of a public office, such as Mayor Holden, is protecting, serving and aiding the people in his jurisdiction. In the case of Mayor Holden, his constituents are the people of the City of Baton Rouge and the Parish of East Baton Rouge. Day in and day out Mayor Holden takes action and makes decisions for the benefit, protection and/or aid of his constituents.
Moreover, the district court found that Mayor Holden derived no personal benefit from any of the three donations.
Although the Board asserts that the three expenditures would not be permitted under the “irrespective test,” as enunciated in the federal regulations for defining personal use, our legislature did not restrict or define the term “personal use.” Considering the broad ambit of this statutory language and because this penal statute must be construed strictly, we conclude that the district court did not err in finding that the three expenditures at issue were not for the personal use of Mayor Holden and that the expenditures were, in the broadest sense, related to the holding of public office by Mayor Holden. Accordingly, the district court did not err in *119 concluding that Mayor Holden did not violate LSA-R.S. 18:1505.2(I)(1).[9]
^CONCLUSION
For the foregoing reasons, we deny Mayor Holden’s motion to strike, and we affirm the district court’s April 27, 2012 judgment. Costs of this appeal in the amount of $1,321.50 are assessed to the appellant, the Louisiana Board of Ethics.
MOTION TO STRIKE DENIED; JUDGMENT AFFIRMED.
KLINE, J., concurs with reasons.

. Louisiana Revised Statute 18:1511.1(A) provides:
The Supervisory Committee on Campaign Finance Disclosure is established. The Board of Ethics, as established in R.S. 42:1132, shall function as the supervisory committee to administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder. The members of the Board of Ethics shall constitute the supervisory committee.

.See LSA-R.S. 18:1511.5(A)(3).

. See LSA-R.S. 18:1511.7(B).

. The check was made payable to Davis C. Hotard, who is a member of PPAP, and to the organization.

. Further, the federal regulations provide a non-exclusive list of expenditures that would constitute "personal use.” See 11 CFR § 113.1(g).

. Mayor Holden has filed a motion to strike the Board’s references to its advisory opinions, asserting that the Board seeks to "expand” the district court record and rely on advisory opinions that were never presented to the district court. We recognize, however, that the Board’s opinions are readily accessible via its website www.ethics.state.la.us/. Like attorney general opinions, the advisory opinions of a board or commission have been recognized as persuasive authority, and the court has discretion to review them as such. See Duplantis v. Louisiana Bd. of Ethics, 00-1750 (La.3/23/01), 782 So.2d 582, 590 n. 7; City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, 753 n. 11. They are not evidentiary matters that need to be put on the record, but may be presented in briefs and be reviewed by the court as any other legal authority. Therefore, Mayor Holden’s motion to strike'is denied.

. We note that criminal sanctions are available for a "knowing, willful, and fraudulent violation” of the CFDA, but any criminal action must be filed by the district attorney or attorney general. See LSA-R.S. 18:1511.6.

. Having reached this conclusion with respect to assignment of error number one, we pre-termit discussion of assignment of error number two.