**CHRISTOPHER J. BRUNO**      *      **NO. 2020-CA-0515**

**VERSUS**      *

     **COURT OF APPEAL**

**JENNIFER M. MEDLEY,**      *
**INDIVIDUALLY AND**      **FOURTH CIRCUIT**
**"JENNIFER M. MEDLEY**      *
**CAMPAIGN FUND"**      **STATE OF LOUISIANA**

     **\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-07905, DIVISION "J"
Honorable Freddie Pitcher, Jr., Ad Hoc
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Dale N. Atkins)

*DYSART, J., CONCURS IN THE RESULTS FOR THE REASONS ASSIGNED BY JUDGE ATKINS*
*ATKINS, J., CONCURS IN THE RESULT WITH REASONS*

Megan C. Kiefer
KIEFER & KIEFER
2310 Metairie Road
Metairie, LA 70001

Joseph M. Bruno
BRUNO & BRUNO LLP
855 Baronne Street
New Orleans, LA 70113

     COUNSEL FOR PLAINTIFF/APPELLEE

Robert T. Garrity, Jr.
Darrinisha L. Gray
THE LAW OFFICE OF ROBERT T. GARRITY, JR.
615 Hickory Avenue
Harahan, LA 70123

     COUNSEL FOR DEFENDANT/APPELLANT

           **AFFIRMED; ANSWER TO APPEAL DENIED**

           **NOVEMBER 2, 2020**

*JCL*

In this judicial election case, defendants/appellants, Jennifer M. Medley, Individually, and Jennifer M. Medley Campaign Fund (sometimes collectively, "Medley"), appeal the September 30, 2020 judgment of the district court granting a preliminary injunction in favor of plaintiff/appellee, Christopher J. Bruno ("Judge Bruno"), which enjoins Medley from airing or publishing a certain campaign advertisement. Judge Bruno answered the appeal, seeking damages under La. C.C.P. art. 2164, including attorney's fees and costs.

For the reasons that follow, we affirm the district court's September 30, 2020 judgment. A majority of the panel denies the award for Article 2164 damages.[1]

Medley and Judge Bruno are both candidates in the November 3, 2020 election for Judge, Division F, in the Civil District Court for the Parish of Orleans. Judge Bruno is the incumbent, who currently presides over Division F. On September 21, 2020, Judge Bruno learned through a media outlet that Medley intended to air a television commercial (the "commercial") that evening during

---

[1] Judge Dysart and Judge Atkins deny the answer to appeal. Judge Lobrano would grant frivolous appeal damages. *See* n. 12, *infra*.

Monday Night Football. The commercial stated, in pertinent part, that Judge Bruno "is called judge by some and a deadbeat dad by others" and that "for 13 years [he] refused to pay a single dime in child support for his son"[2] or provide his former wife with discovery regarding his income. That afternoon, Judge Bruno filed a petition for temporary restraining order ("TRO") and preliminary and permanent injunction seeking to enjoin Medley from airing the commercial ("Petition").

In her Answer to Judge Bruno's Petition, Medley's original defense was that she had not published "any information concerning the plaintiff [Judge Bruno] that is patently false or that will cause irreparable injury, loss and damage" and that "the allegations contained in the political advertisement are true." Thus, Medley claimed that she could legally disseminate the commercial, which contained no falsities.

The district court granted the TRO and scheduled a preliminary injunction hearing on September 30, 2020. At the preliminary injunction hearing, the district court heard testimony from Medley, Judge Bruno, and Judge Bruno's expert witness, attorney Steven J. Lane. The commercial and portions of the record from Judge Bruno's divorce were introduced into evidence.

On September 30, 2020, the district court found that the commercial contains falsities as Judge Bruno did not refuse to pay child support or to provide discovery in his divorce proceedings. The district court rendered judgment,

---

[2] Judge Bruno's son is now an adult.

granting the preliminary injunction and ordering that Medley and those acting on her behalf:

> … are restrained, enjoined, and prohibited from distributing printed material, airing television or radio commercials, publishing, or causing to be published advertisements, or to post on social media sites statements, ads, comments, statuses, which falsely state that CHRISTOPHER J. BRUNO is a deadbeat dad or that he failed or refused to pay child support, or that he refused to provide discovery to his former spouse regarding his income, or any statement of suggestion that would lead a person of average intelligence to conclude that any of the statements were true and any such advertisement or posting shall be immediately taken down or removed.

The preliminary injunction further ordered Medley and those acting on her behalf to remove all references to the commercial from social media and campaign literature.

On appeal, Medley abandoned her original defense as to the truthfulness of her statements against Judge Bruno. She does not now dispute that the commercial contains falsities, particularly as to her allegations that Judge Bruno refused to pay child support. Medley argues nowhere on appeal that these statements in her commercial are true. She now alleges in her appeal that "with respect to the issue of child support, he [Judge Bruno] used every available tactic to delay the support of his child." Furthermore, Medley seems to allege that she can now disseminate the commercial containing falsities because she did not knowingly make a false statement against Judge Bruno nor recklessly make a false statement. Medley's only substantive argument on appeal is that she claims that the district court did not address the nature of her knowledge of the falsities in the commercial as being knowing, reckless, and/or negligent.

4

Medley, in bringing this devolutive appeal, sought expedited consideration from this Court. Judge Bruno answered the appeal, seeking frivolous appeal damages. Medley raises two issues[3] on appeal:

1. whether the preliminary injunction restraining false judicial-election speech "unconstitutionally stifled political speech"; and

2. whether the district court erred in allowing an attorney to testify as an expert in the law.

The primary issue before this Court is whether the district court judgment violates Jennifer Medley's First Amendment freedom of speech by restraining false judicial-election speech. We find that it does not.

This Court reviews preliminary injunctions subject to the following standard of review on appeal:

> In general, the standard of review for a preliminary injunction is whether the trial court abused its discretion. *Rand v. City of New Orleans*, 12-0348, p. 3 (La. App. 4 Cir. 12/13/12), 125 So.3d 476, 479. "That broad standard is, of course, based upon a conclusion that the trial court 'committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.' " *Id.*, 12-0348, pp. 3-4 (quoting *Yokum v. Pat O'Brien's Bar, Inc.*, 12-0217, p. 7 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80). "[W]here errors of law are involved, the appropriate standard of review is *de novo*." *Vieux Carre*

---

[3] In her brief, Medley sets forth three assignments of error, contending that the district court erred:

1. in granting the TRO without considering whether Medley acted with malice;
2. in unconstitutionally stifling political speech; and
3. in allowing an attorney to testify as an expert in the law.

Medley fails to brief the merits of any argument concerning the TRO. "[I]f an appellant identifies an assignment of error or an issue presented for review, but fails to brief that point with citations to the record and support in the law, that issue or assignment is deemed waived." *McMaster v. Progressive Sec. Ins. Co.*, 14-0155, pp. 6-7 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983 (citing Uniform Rules Courts of Appeal, Rule 2-12.4(B)(4)). We consider the issue of malice, however, with respect to Medley's other assignment of error.

*Comm'n Found. v. City of New Orleans*, 17-0527, p. 4 (La. App. 4 Cir. 1/31/18), —— So.3d ——, ——, 2018 WL 651668, *8, *writ denied*, 18-0248 (La. 2/19/18), 237 So.3d 514.

*Meredith v. I Am Music, LLC*, 18-0659, p. 4 (La. App. 4 Cir. 2/13/19), 265 So.3d 1143, 1145-46.

The First Amendment mandates that "Congress shall make no law … abridging the freedom of speech…" U.S. Const. Amend. I. Likewise, Louisiana Const. Art. I, § 7 provides that "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

The Louisiana Code of Judicial Conduct governs false statements in the context of judicial elections and restrains judicial candidates – not only judges – from inappropriate political and campaign activity, including the making of a knowingly false statement. Canon 7 requires judicial candidates to "maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity and independence of the judiciary." Additionally, a judicial candidate must "take reasonable measures to ensure that other persons do not undertake, on behalf of the judge or judicial candidate, any activities prohibited under this Canon."

Rule 8.2 of the Louisiana Rules of Professional Conduct provides that a "lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." Also, a "lawyer who is a candidate for

6

judicial office shall comply with the applicable provisions of the Code of Judicial Conduct." *Id.*

La. R.S. 18:1463(C)(1) regulates false statements in the context of political campaigns and provides for a neglect standard as opposed to a "reckless disregard" analysis:

> [n]o person shall cause to be distributed, or transmitted, any oral, visual, or written material containing any statement which he knows or **should be reasonably expected to know makes a false statement about a candidate** for election in a primary or general election or about a proposition to be submitted to the voters.

(Emphasis added). This statute entitles an "affected candidate … to an injunction to restrain future violations" of Subsection (C). La. R.S. 18:1463(D)(1).

The United States Supreme Court has recognized a lack of First Amendment protection for "calculated falsehoods" in political speech, that is, "knowing" or "reckless" false statements:

> That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected.

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 687, n. 34, 109 S.Ct. 2678, 2696, 105 L. Ed. 2d 562 (1989)(quoting *Garrison v. State of Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964)).

The Louisiana Supreme Court explained the interplay between false political speech and constitutional protections in *State v. Burgess*, 543 So.2d 1332, 1335 (La. 1989):

The standard for constitutionally protected false speech in the context of public figures was given in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In that case, the Court held the Constitution prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct "unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Although this standard was applied in the context of civil defamation suits, it is clear the standard defines the parameters of protected speech involving public figures.

However, the United States Supreme Court in 2015 "recognized the 'vital state interest' in safeguarding 'public confidence in the fairness and integrity of the nation's elected judges'" and upheld a provision in the Florida Code of Judicial Conduct that restricted solicitation activities of judicial candidates. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445, 135 S.Ct. 1656, 1666, 191 L.Ed. 2d 570 (2015)(quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009)). Chief Justice John G. Roberts, authoring the opinion, applied strict scrutiny to the content-based law, but ruled that the state had a compelling government interest in preserving the integrity of judicial elections. *Williams-Yulee*, 575 U.S. at 444, 135 S.Ct. at 1666.

Thus, an injunction pursuant to La. R.S. 18:1463 clearly does not violate a person's First Amendment freedom of speech if the judicial-election speech is knowingly or recklessly false. *See Johnson v. Montero*, 17-0274, p. 4 (La. App. 4 Cir. 3/29/17), 215 So.3d 479, 482.[4]

---

[4] Although not argued by the parties here or in *Johnson*, *supra*, a La. R.S. 18:1463 injunction is arguably proper when a judicial candidate should have been "reasonably expected to know" that the judicial-election speech is false, in that judicial candidates can be held to a higher standard of conduct "in safeguarding 'public confidence in the fairness and integrity" of our elected judges. La. R.S. 18:1463; *see also Williams-Yulee*, 575 U.S. at 445, 135 S.Ct. at 1666.

"Actual malice" is defined as "knowledge that [the statement] was false or [made] with reckless disregard of whether it was false or not." *Id.*, 17-0274, p. 2, 215 So.3d at 481 (quoting *Burgess*, 543 So.2d at 1335; *New York Times v. Sullivan*, 376 U.S. at 279, 84 S.Ct. at 726). As this Court stated, "although the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition, we have made clear that the defendant must have . . . entertained serious doubts as to the truth of his publication." *Landry v. Roberson Advert. Serv., Inc.*, 95-0095, p. 7 (La. App. 4 Cir. 8/23/95), 660 So.2d 194, 197 (quoting *Connaughton*, 491 U.S. at 667, 109 S.Ct. at 2686).  "A 'reckless disregard' for the truth requires more than a departure from reasonabl[y] prudent conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Landry*, 95-0095, p. 7, 660 So.2d at 198 (citing *Connaughton*, 491 U.S. at 688, 109 S.Ct. at 2696).

However, "in reviewing a determination of actual malice in a case governed by *New York Times Co. v. Sullivan*[, *supra*,]" appellate courts "must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 514, 104 S.Ct. 1949, 1967, 80 L.Ed. 2d 502 (1984). Stated another way:

> Although credibility determinations are reviewed under the clearly-erroneous standard because the trier of fact has had the opportunity to observe the demeanor of the witnesses, the reviewing court must examine for itself the statements in issue and the circumstances under which they were made to see whether they are of a character which the principles of the First Amendment protect…

*Connaughton*, 491 U.S. at 688, 109 S.Ct. at 2696 (internal quotations omitted).

Subsequent Supreme Court cases regarded the standard of review described in

*Bose*, *supra*, as *de novo* review of "findings regarding actual malice." *See, e.g.,*

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 621, 123

S.Ct. 1829, 1841, 155 L.Ed.2d 793 (2003).[5]

> *Louisiana Legal Ethics: Standards and Commentary, 2019*[6] provides the

following annotations under Rule 8.2 of the Louisiana Rules of Professional

Conduct with respect to subjective and objective standards in analyzing knowledge

of a judicial candidate:

> The mere fact that a lawyer subjectively believes statements about a judge or judicial candidate are true will not exonerate the lawyer. *In re Mire*, 197 So. 3d 656 (La. 2016); *In re Lee*, 977 So. 2d 852 (La. 2008); *In re Simon*, 913 So. 2d 816, 824 (La. 2005); *see La. State Bar Ass'n v. Karst*, 428 So. 2d 406 (La. 1983). Indeed, a lawyer violates this rule if the lawyer has exhibited "reckless disregard" for the truth irrespective of any subjective belief that he was not speaking falsely. *See* La. Rules of Prof'l Conduct r. 8.2(a) (2004). This is so because the Louisiana Supreme Court has "adopted an objective standard, rather than a subjective standard, in analyzing whether a statement is . . . a violation of the rule." *In re Simon*, 913 So. 2d 816, 824 (La. 2005); *In re Mire*, 197 So. 3d 656 (La 2016). False statements about the judiciary are arguably protected by the First Amendment if made neither knowingly nor recklessly. *See Garrison v. Louisiana*, 379 U.S. 64 (1964), *overruled on other grounds by Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967).

---

[5] *See also Muller v. Fort Pike Volunteer Fire Dep't*, 19-0156, p. 9, n. 10 (La. App. 4 Cir. 6/26/19), 275 So.3d 927, 934 (citing *Bose*, *supra*; *quoting Mashburn v. Collin*, 355 So.2d 879, 886-87 (La. 1977) and observing that although "[i]t is true that, as a general rule, a Louisiana appellate court should not disturb the reasonable findings and inferences of fact of a trial judge or jury, even though the appellate court may feel that its own evaluations and inferences are as reasonable ... when interpretation of a communication in the light of the constitutional requirements is involved, our scope of review is to examine in depth the statements in issue and the circumstances under which they were made ... and to re-examine the evidentiary basis of the lower court decision in the light of the Constitution").

[6] Dane S. Ciolino, *Louisiana Legal Ethics*, Rule 8.2. Judicial and Legal Officials (January 10, 2020), https://lalegalethics.org/louisiana-rules-of-professional-conduct/article-8-maintaining-the-integrity-of-the-profession/rule-8-2-judicial-and-legal-officials.

The adoption of an objective-based analysis in determining whether a false statement was knowing is seen in Rule 1 of the Rules of Professional Conduct when in defining "knowingly" it is stated that a "person's knowledge may be inferred from circumstances."

With respect to related legal presumptions and burden of proof guidelines, the party seeking the injunction has the "heavy burden of showing justification for the imposition of such a restraint." *Guste v. Connick*, 515 So.2d 436, 438 (La. 1987)(quoting *Organization For A Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971)). In Louisiana civil defamation laws, certain factual statements are such that malice or fault is presumed and the person defending the statement must rebut the presumption. Defamatory statements are either defamatory *per se* or susceptible of a defamatory meaning. *Mitchell v. Villien*, 08-147, p. 6 (La. App. 4 Cir. 8/26/09), 19 So.3d 557, 562 (citations omitted). Words that accuse one of a crime are defamatory *per se. Costello v. Hardy*, 03-1146, pp. 13-14 (La. 1/21/04), 864 So.2d 129, 140. The Court explained in *Costello*:

> In Louisiana, defamatory words have traditionally been classified into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. *Lemeshewsky v. Dumaine*, 464 So.2d 973, 975 (La. App. 4 Cir. 1985). Words which expressly or implicitly accuse another of criminal conduct, … even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. *Kosmitis*, 28,585 at 4, 685 So.2d at 1180; *Lemeshewsky*, 464 So.2d at 975; 12 CRAWFORD, LOUISIANA CIVIL LAW TREATISE: TORT LAW § 17.8 at 315. **When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant.** *Kosmitis*, 28,585 at 4, 685 So.2d at 1180. The element of injury may also be presumed. *Id.*

11

*Id.* (Footnotes omitted)(Emphasis added).

Medley's commercial accuses Judge Bruno of being a "Deadbeat Dad" by refusing to pay child support for 13 years, which are the elements of a crime. The "Deadbeat Parents Punishment Act of Louisiana," cited in La. R.S. 14:75, makes failure to pay child support for at least one year, and with more than $15,000 owed, a felony punishable by up to two years imprisonment. *See* La. R.S. 14:75(C)(5); *State v. Stanley*, 49,683, p. 2 (La. App. 2 Cir. 1/14/15), 161 So.3d 1034, 1036 (characterizing subsection (C)(5) as the "felony paragraph"). When falsities are made in a judicial election, inferences can be drawn, objective determinations can be made, and presumptions can be applied, and the person requesting publication of such falsities must rebut such inferences, determinations, and presumptions.

After a review of the record and the above principles of law, we find that the district court judgment did not violate Jennifer Medley's First Amendment freedom of speech by restraining false judicial-election speech.

At the preliminary injunction hearing, portions of the record of Judge Bruno's divorce proceedings were introduced into evidence, including an April 8, 2008 Memorandum in Opposition to Hearing Officer Recommendation, filed by the former Mrs. Bruno (the "2008 Memo"); Judge Bruno's opposition to the 2008 Memo; and a Consent Judgment dated April 2, 2009 (the "2009 Consent Judgment"). These three documents clearly set forth, *inter alia*, that there was never a judgment for child support during the 13 years that Medley claims Judge Bruno refused to pay child support.

The 2008 Memo contained the following statements:

- "Despite 13 years of litigation, no judgment fixing child support has ever been rendered."
- "At all times during the thirteen years, [Judge Bruno] has paid no child support."
- "Previous to the 2007-2008 school year, [Judge Bruno] paid 50% of the tuition and for the child's health insurance."
- "He only paid one half of the tuition …"

Judge Bruno's opposition to the 2008 Memo states that both he and the former Mrs. Bruno are millionaires and that, per their extrajudicial agreement, neither parent paid child support to the other and both parents shared common expenses for the child, such as tuition.

In the 2009 Consent Judgment, the parties agreed that Judge Bruno was to pay to his former wife a lump sum of child support, representing both an arrearage retroactive to May 21, 2007 and future child support through the child's graduation from high school. The 2009 Consent Judgment also set forth discovery proceedings between the parties.

The district court also heard the following testimony at the preliminary injunction hearing. Medley testified that she has held a license to practice law for 18 years. She understands that she is responsible for what her campaign does, and that as a judicial candidate, she is subject to the judicial canons. Medley testified that she has handled "a couple" of family law cases in her practice and she understands what "arrearage" means.

Medley testified that she reviewed the court record of Judge Bruno's divorce, and she based the statements in her commercial on that court record.

According to Medley, the commercial was created in September 2020. Fire on the Bayou, LLC, a film company, wrote the commercial's text based on Medley's dictation of her ideas for the commercial. Medley's campaign paid for the commercial. Medley viewed the commercial once it was finished. She approved all statements made in the commercial.

Medley testified that without an order to pay child support, a litigant cannot refuse to pay child support; rather, child support must be ordered. In her testimony, Medley acknowledged that she could identify no order, other than the 2009 Consent Judgment, which ordered Judge Bruno to pay any child support. She could not testify to any court order finding that Judge Bruno refused to pay child support for 13 years.

Medley also testified that the definition of a "deadbeat dad" is a "male or female generally who does not support their child, does not pay child support." On cross-examination, Judge Bruno's attorney elicited Medley's testimony that she did not have evidence of any other person calling Judge Bruno a "deadbeat dad," and that, at the time the commercial was prepared to air, Medley could identify no other person who called Judge Bruno a "deadbeat dad." Medley testified that she relied on the 2008 Memo by the former Mrs. Bruno, which contained an argument that Judge Bruno had paid no child support. The 2008 Memo also stated, however, that Judge Bruno paid for the child's health insurance and half of his child's tuition. On cross-examination, Medley admitted that she had no reason to believe that the former Mrs. Bruno's statements concerning these tuition and health

insurance payments were false. Medley further acknowledged in her testimony that payments for a child's tuition and health care expenses are child support. *See* La. R.S. 9:315.4;[7] La. R.S. 9:315.5;[8] La. R.S. 9:315.6.[9]

Judge Bruno also testified at the hearing. According to Judge Bruno's testimony, there was no judgment requiring him to pay child support between 1995 and 2007. Judge Bruno testified that the statement that he refused to pay child support for 13 years is a lie; it is also a lie that he tried to tie his former wife's hands with respect to being paid child support. Pursuant to the 2009 Consent Judgment, Judge Bruno paid a lump sum to the former Mrs. Bruno, which was retroactive to May 21, 2007, the date on which the former Mrs. Bruno filed a rule to increase child support. The 2009 Consent Judgment resolved the former Mrs. Bruno's rule to increase child support as well as discovery motions by both parties.

Judge Bruno tendered and the district court accepted attorney Steven J. Lane ("Lane") as an expert in family law.[10] Lane testified that, based on his review of

---

[7] "… The cost of health insurance premiums incurred on behalf of the child shall be added to the basic child support obligation." La. R.S. 9:315.4.

[8] "By agreement of the parties or order of the court, extraordinary medical expenses incurred on behalf of the child shall be added to the basic child support obligation…." La. R.S. 9:315.5.

[9] "By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation: (1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child…." La. R.S. 9:315.6.

[10] Medley also argues that the district court improperly allowed Lane to testify as an expert in the law. A district court is "afforded wide discretion" in admitting expert testimony, and the "district court's decision to qualify an expert will not be overturned absent an abuse of discretion." *Cheairs v. State ex rel. Dep't of Transp. & Dev.*, 03-0680, p. 6 (La. 12/3/03), 861 So.2d 536, 541, *on reh'g in part* (01/16/04)(citing La. C.E. art. 702, cmt. (d)). More importantly, the allowance of an attorney's testimony about his interpretation of Louisiana law is harmless in a judge trial. *Louisiana Bd. of Ethics v. Holden*, 12-1127, p. 5 (La. App. 1 Cir. 6/25/13), 121 So.3d 113, 116-17 (citations omitted). Nothing in the record on appeal reflects that the district court

the partial divorce record, the campaign commercial is "false." Lane testified that the statement that Judge Bruno had not paid a dime in child support for 13 years cannot be correct. According to Lane's testimony, child support is comprised of cash payments and other expenses, which include payments for education, medical insurance, or other extrajudicial in-kind payments. *See* La. R.S. 9:315.4; La. R.S. 9:315.5; La. R.S. 9:315.6. Lane pointed out that the 2008 Memo states that Judge Bruno paid half tuition and all health insurance. Lane opined in his testimony that an attorney reading the 2008 Memo would have to conclude that the statement that Judge Bruno refused to pay child support for 13 years is false.

In Lane's opinion, the statement that Judge Bruno tied the hands of his former wife with respect to discovery was also incorrect. Lane testified that nothing in the pleadings he reviewed supported the statement that Judge Bruno refused to provide discovery regarding his income. Rather, Lane testified that the pleadings showed that both parties were very wealthy such that the financial documents at issue in their discovery dispute were not relevant to a child support calculation.[11] The relevant issue was the child's expenses, and Judge Bruno would be justified in objecting to producing documents concerning his personal financial position. Based on Lane's review of the pleadings, the rule to increase child support contemplated that support was being paid pursuant to extrajudicial agreement and the former Mrs. Bruno was seeking an increase. Lane remarked that

---

allowed its role in interpreting and applying the law to be usurped. We find this assignment without any merit.

[11] *See generally* La. R.S. 9:315.13(B).

nothing in the 2009 Consent Judgment stated that no child support was paid for 13 years. In Lane's reading, the 2009 Consent Judgment's language regarding arrearages contemplated only the date the rule was filed until the date of judgment, and that the parties had reached an agreement to pay retroactively from the date the rule was filed.

The district court reviewed the campaign commercial, along with portions of the divorce record, as well as the testimony of all witnesses. In particular, the district court heard Medley admit in her testimony that she knew that tuition and health insurance are child support payments, that she could identify no judgment ordering 13 years of past due child support payments, and that she had no evidence or reason to doubt the former Mrs. Bruno's statements that Judge Bruno made tuition and health insurance payments on the child's behalf.

Based on our review of the entire record, we conclude that the district court correctly found and the evidence before the district court supported a finding of actual malice. We find nothing in the record that leads us to conclude that the district court failed to consider malice or manifestly erred in determining that Medley knew her commercial was false or at the very least acted with reckless disregard for whether her statements in the commercial were false. This assignment lacks any merit.

In summary, under the circumstances presented in this case, we find neither an abuse of discretion in the district court's grant of the preliminary injunction nor

17

any violation of the First Amendment, based on our independent review of the record.

Lastly, we address Judge Bruno's answer to the appeal, wherein he argues that Medley's appeal is frivolous and seeks La. C.C.P. art. 2164 damages, including attorney's fees and costs incurred in defending against the appeal.

La. C.C.P. art. 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

A majority of this panel denies Article 2164 damages, and said denial is the judgment of this Court.[12]

---

[12]    I disagree, however, with the majority's denial of frivolous appeal damages, as I find that an award for Article 2164 damages is warranted. I find that Medley's appellate arguments are frivolous in that Medley abandoned her defenses originally advanced and adopted unfounded defenses and baseless relief requests on appeal.

> "Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact of law." *Johnson v. Johnson*, 08-0006, p. 5 (La. App. 4 Cir. 5/28/08), 986 So.2d 797, 801 (citation omitted). "The statute permitting frivolous appeal damages must be strictly construed in favor of the appellant, as it is penal in nature." *Id.* Appeals are favored, and due to the potential "chilling effect on the appellate process," damages will not be granted "unless the appeal is unquestionably frivolous." *Id.*, 08-0006, pp. 5-6, 986 So.2d at 801 (quotation omitted). "Damages for a frivolous appeal will be awarded if the appeal is taken solely to delay the action, if the appellant does not seriously believe the law and argument that is being advanced, or if the appeal does not present a substantial legal question." *Wendel v. Travelers Ins. Co.*, 14-0002, p. 12 (La. App. 4 Cir. 10/8/14), 151 So.3d 828, 837.

Considering that Medley requested expedited consideration in an effort to obtain this Court's review before the election, I see no reason to find that this appeal was taken for the purpose of delay. Quite the opposite: Medley would want this Court to promptly overturn the injunction preventing her from running her campaign commercial containing falsities, which she knows is illegal. At this juncture, Medley is fully aware of the district court's ruling that the campaign speech within her commercial is false and unsupported by the court records on which she claims to rely. In fact, she argues nowhere on appeal that the statements in her commercial are true. Her only substantive argument to reverse the preliminary injunction is that the district

Accordingly, for the reasons set forth in this opinion, we affirm the September 30, 2020 judgment of the district court.

**AFFIRMED; ANSWER TO APPEAL DENIED**

---

court did not address Medley's knowledge that her commercial was false. Any determination that the falsities were knowing, reckless, or negligent is meaningless at this point in the litigation in that Medley cannot air or publish the commercial containing falsities.

Under the circumstances presented here, I can reach no other conclusion than Medley does not seriously believe the argument she is advancing, and her appeal does not present any substantial legal question. Medley abandoned her defenses originally advanced at district court as to the truthfulness of the statements against Judge Bruno and adopted on appeal unfounded defenses and baseless relief requests. I can discern no other purpose in bringing this appeal than to further harass Judge Bruno with litigation to continue the promotion of a false campaign ad and the perpetration of the falsities in the media. Allowing judicial candidates carte blanche to defame opposing candidates is against public policy and an abuse to the First Amendment freedom of speech. Medley should be held responsible for such abuses that involve the improper use of the appellate process. Her actions are uniquely harmful when one considers the effects of social media, which allows publishers to disseminate false stories to mass audiences instantaneously, throughout this appeal process. Such Article 2164 damages will deter similar reckless conduct in the future, promote the integrity of judicial elections and the appellate process, and discourage the politicization of the judiciary resulting in increased judicial election expenses and eventually compromising judicial integrity and impartiality leading to a decreased public accountability of the courts.

I, therefore, find this appeal to be frivolous. I would order Medley to pay La. C.C.P. art. 2164 damages incurred by Judge Bruno, in the amount of $5,000.00 in attorney's fees plus costs of appeal.

19